(No. 37376.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR LEE ADKINS, Plaintiff in Error.

*Opinion filed November 26, 1963.*

DONALD S. FRISCH, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for appellant.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Arthur Lee Adkins, was found guilty of rape after a bench trial, and was sentenced to a term of twenty years in the Illinois State Penitentiary. On this writ of error he contends that the evidence did not establish his guilt beyond a reasonable doubt.

The prosecutrix, Lillie Greer, testified that her mother and three other women "club members" drove her home from a party shortly after 3 A.M. on April 23, 1961. She entered a lighted hallway on the first floor where she waited for a self-service elevator. The defendant entered the building and stepped onto the elevator with her. He stopped the elevator at the second floor, drew a "blueish rusty looking gun" and said "Don't say anything. Come on." He ordered her to get off the elevator and, with the gun against her back, forced her to walk ahead of him down a stairway to the first floor and into the front seat of a " '59 red Pontiac with red and white upholstering," which was parked in the rear parking lot. He drove to the rear of a building at the corner of 39th Street and Lake Park Avenue and, with the gun in one hand, forced her to remove parts of her underclothing and engage in sexual intercourse with him. He then ordered her at gunpoint to get out of the car and to precede him into an empty building "through the basement part up to the first floor" and into a bathroom which had no lights. She was there forced to remove her coat, lie on the floor and again have sexual relations with him. During this act the gun was on the floor beside them. The defendant left the building after telling her not to leave for ten minutes.

The prosecutrix took a taxi back to her apartment. She testified that she told the driver what had happened to her, and that when she reached her apartment she related the details to her mother and some club members who were waiting there with her husband and children. "About three minutes" after she returned, police detectives arrived. They

had apparently been called earlier by her mother. The prosecutrix testified that she gave a full description of her assailant, his car and his gun to the detectives who wrote down the information. The prosecution was unable to produce this description when it was called for by the court at the trial. On cross-examination the prosecutrix testified that on the night she was raped the defendant wore the same brown suit he was then wearing in the courtroom, and also wore a necktie, "brown shoes, no hat, and a brownish color three-quarter length coat."

When two police detectives attempted to arrest the defendant on April 25 he fled and was apprehended only after he was shot and wounded. The precise reason for the arrest does not appear in the record, although it is apparent that it was prompted at least in part by certain armed robberies to which the defendant subsequently pleaded guilty. On April 26 the prosecutrix picked out the defendant from a lineup of about ten men at a police station and identified him as her assailant.

The State introduced in evidence a black revolver with no rust on it. One of the arresting detectives testified that he took this gun from the defendant's apartment after his arrest. During her testimony the prosecutrix identified this gun as the one used by the defendant on April 23.

Another detective who participated in the arrest testified that keys removed from the defendant's pocket immediately following his arrest fit the ignition switch of a "'59 two door Bonneville Pontiac" which was parked in front of the apartment building in which defendant lived. In response to questions about the color of the car he stated that "I know that the bottom part was red" and that to the best of his recollection the car was solid red. He did not recall the color of the upholstery.

The defendant denied that he raped the prosecutrix and testified that he had never seen her prior to the police station

line-up on April 25. He stated that in the early morning hours of April 23 he attended a party in his apartment building but went to his room at about 1:30 or 2 A.M. and did not thereafter leave his apartment. He admitted that the gun belonged to him, and he also testified that on April 23 he was in possession of a 1959 red Pontiac which had a white top and all white interior upholstery.

Defendant contends that the testimony of the prosecutrix was not clear and convincing and that the State did not produce sufficient corroborating evidence to sustain the conviction. It is true, as the defendant points out, that there was no testimony by the taxi driver, the prosecutrix's mother, her husband or the women club members to whom she told her story. Her testimony that she complained to the police is not corroborated by the direct testimony of any police officer, but only inferentially by their subsequent conduct.

Her testimony was, however, corroborated by the defendant's admission that the gun was his and that on the date in question he possessed the kind of a car that was used in the crime. The defendant's contention that her testimony was not clear and convincing is based entirely upon asserted inconsistencies in her description of the car and the gun. She testified on direct examination that the car was a red 1959 Pontiac with red and white upholstery. On cross-examination she indicated that the car was solid red. A detective testified that he thought the car was solid red but did not remember the color of the upholstery. The defendant testified that the car was a two-tone red and white 1959 Pontiac, with all white upholstery. On direct examination the prosecutrix described the gun used by her assailant as "blueish rusty looking" and on cross-examination as "blueish looking and rusty." The gun introduced in evidence and identified by the prosecutrix at the trial as the one used by the defendant was black and not rusty. We are of the opin-

ion that these inconsistencies in the testimony were not so significant as to preclude a finding of guilt beyond a reasonable doubt.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*