**People of the State of Illinois, Plaintiff-Appellee, v. Jimmy D. Hill, Defendant-Appellant.**

**Gen. No. 51,801.**

First District, First Division.

November 4, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Professor James R. Thompson, Northwestern University School of Law, James J. Doherty and Marshall J. Hartman, Assistant Public Defenders, of Counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Howard Levine and Sheldon M. Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a rape case. In a bench trial defendant was found guilty and sentenced to five to fifteen years in the penitentiary. On appeal, defendant contends that he was

denied his constitutional right to a jury trial because his waiver thereof was not understandingly made. He also contends that he was not proved guilty beyond a reasonable doubt.

The complaining witness testified that on October 29, 1965, she was employed at the Presbyterian-St. Luke's Hospital and punched out at 11:15 p. m. She took the "El" to 51st Street and started walking to her home. While walking south on Michigan Avenue a man grabbed her around the neck and said, "Walk, Bitch." She was forced to accompany the man down 52nd Street into an alley between two buildings and down into a gangway or basement. She testified she was frightened and when she got into the gangway she could hear people talking. She tried to make some kind of sound, and he threatened to kill her. He had his arm around her neck and his hand over her mouth. He forced her to take off all of her clothing and committed an act of intercourse. Then, at his instruction, she got her clothing and, with his arm around her neck and his hand over her mouth, they started back the way they had come. Two men appeared with a flashlight, and the man with her ran away. One of the men asked her where he had gone, and she pointed into the alley. She further testified, "The next time I saw the defendant was when the officers who captured him brought him back to the car. . . . One of the officers asked if this was the fellow and I said it was. I told the officers what he had done and that I didn't know him or anything about him."

On cross-examination, she said there was a high hanging light in the courtyard, about two feet from the basement, and she could see defendant's face. It was a few minutes after the officers took her to the squad car that the defendant was brought to her, and she identified him. She went to the police station, where she gave a statement and identified defendant again. The next time she saw him was in court.

79

Police Officer Richard Jarmon testified that he and Officer Johnson were in a police car, in uniform, when they received a call to go to 5231 South Michigan. Upon arriving they saw the complaining witness standing in the rear yard. "She seemed hysterical. She was holding some clothing in her hand. I asked her the direction in which the offender had fled and for his general description. Then I went into the alley and met Officer G. Hawkins, who had caught the defendant." The officers took the defendant over to the victim in the squad car, and she identified him as the man who had intercourse with her. At the station, he asked the defendant if he had intercourse with the complaining witness, and he said that he had.

Police Officer G. L. Hawkins testified that he answered a radio call of a rape in progress at 5231 Michigan. "Coming to this address, I stopped on the corner and noticed two other officers who were yelling at me and pointing to the yard. They were referring to the rapist. I saw him proceeding eastbound toward a courtway. I proceeded down 52nd Street, and when I reached the alley the defendant came out of the alley heading north. As I approached him two officers behind him were commanding him to stop. I was in uniform, identified myself and also told him to stop. I chased him east on 52nd Street, across Indiana to the rear of approximately 5200 Indiana, where he jumped behind cover. I took him back to the scene, where the lady identified him as the man who had molested her. At this time his clothes were all disarranged, his pants were unzipped." On cross-examination, he testified that the defendant said he was not doing anything at the scene of the offense.

Officer James Hogan questioned defendant at the police station. "I asked him whether he had ever seen the victim . . . who was sitting right there, and he said he had. He said that he was walking behind her on Michi-

gan Avenue when he blacked out. He couldn't remember any more. I asked him what he meant by blacking out and he answered that he had been drinking and couldn't remember anything beyond that."

The defendant testified that he lived at 224 East 53rd Street, and prior to his arrest he was at home with his family. "I left home at about a quarter to twelve. I wanted to go to 51st and Indiana to get some barbecue. On the way there, I stopped in a gangway to urinate when a bunch of policemen swept by me. They took me to the police station. Then they brought in a woman and asked if I was the one who had committed a crime on her and she said that I was. They told me I was charged with rape. I told them I did not do it. The first time I saw this woman was in the police station." He denied the testimony of the complaining witness and the police officers.

In rebuttal, Police Officer William Strocchia testified that he questioned the defendant during the morning hours of October 30, 1965, in the squad room of the 2nd District. He asked defendant if he knew the victim, and he said that he had seen her on occasion. "With respect to this offense, he said that he could only remember seeing her walking down the street and that he crossed the street diagonally behind her. Then he went blank. He had been drinking and that was all he could remember."

Considered first is defendant's contention that his right to a trial by jury was not understandingly waived by him in open court (Ill Rev Stats, c 38, §§ 115–1 and 103–6). The record indicates that when the case was called for trial, counsel for the defendant informed the court that the defense was waiving a jury. The trial judge twice asked the defendant if he knew what a jury trial was and defendant responded in the negative. The judge then passed the case temporarily, instructing de-

fense counsel to inform defendant of the nature of a jury trial. A short time later the case was called, and defense counsel stated, "I have conferred with my client and for the second time, maybe the third time, explained to him what the jury was and he has again expressed his desire to waive the jury and I've asked him to sign such a waiver and he has done so." The Court: "By signing this you have waived a jury trial, Mr. Hill." Defendant: "Yes."

■■ Defendant contends that People v. Turner, 80 Ill App2d 146, 225 NE2d 65 (1967), compels a reversal here. We do not agree. There the court reversed and remanded because the defendant did not understand the meaning of a jury waiver. The defendant was an illiterate and made an "X" to signify his assent to the jury waiver. In the instant case during the hearing of a motion for a new trial, defendant's counsel in urging this point remarked, "I didn't understand why he should not understand what a jury was. I had talked to him several times about this, and he is a young man seemingly intelligent enough to understand what a jury was, and he didn't seem to understand what the nature of a jury was." In reply, the court observed, ". . . The only conclusion I could draw from his testimony was he knew exactly what he was testifying about and testified cautiously and astutely." We believe the record supports the remarks of the trial judge. Defendant is not entitled to complain of an alleged error which was invited by his behavior and that of his attorney. People v. King, 30 Ill App2d 264, 268, 174 NE2d 213 (1961).

The pronouncements made in People v. Richardson, 32 Ill2d 497, 207 NE2d 453 (1965), apply here. There it is said (p 499):

> "Whether a jury waiver has been knowingly and understandingly made depends upon the facts and circumstances of each case, and there can be no

precise formula for determining whether a waiver is understandingly made. . . . Merely because the court did not at length discuss the consequences of the jury waiver does not necessarily require a holding that the waiver was not understandingly made. . . . While the trial court might well have dwelt at more length on this matter in complying with its duty to insure that the jury waiver was expressly and understandingly made . . . , we believe that this record indicates that defendant understandingly waived his right to trial by jury."

Defendant next contends that the State failed to prove him guilty beyond all reasonable doubt. Defendant asserts that where a rape conviction rests upon the testimony of the complaining witness, and the accused denies the charge, her testimony must be corroborated by other facts and circumstances in the case. Defendant argues the commission of the offense was not sufficiently established because the only evidence that penetration occurred was the statement of the complaining witness. Although she testified that she went to the Provident Hospital and the County Hospital, the record contains no mention of medical findings by these institutions. Defendant further argues that it is basic to a forcible rape charge that the evidence must show the act was committed by force and against the will of the female, and if the victim has the use of her faculties and physical powers, the evidence must show resistance sufficient to indicate the act was done against her will. Defendant argues the record fails to demonstrate that any resistance the complaining witness might have offered would have necessarily been futile and overly dangerous to her. Defendant further notes that the record shows an important discrepancy between Officer Jarmon's testimony at the preliminary hearing and at the trial, which the officer admitted.

Defendant's authorities include People v. Faulisi, 25 Ill2d 457, 185 NE2d 211 (1962), where the Supreme Court said (p 463):

> "In our opinion, however, more striking than these corroborating factors is the complete absence from the record of other corroborating evidence which might reasonably have been supposed to be available had the complaining witness been raped, for example, the failure to produce medical testimony as to the injuries to the complaining witness despite the fact that the record shows that there was a medical examination, her failure to cry for help, and the absence of any physical evidence of any struggle sufficient to overpower physically or overcome the will of the complaining witness. Significant also, in our view, is the fact that neither the prosecutrix nor her husband made any complaint to the police until after the police had been called by the defendant's wife at the request of the defendant."

Defendant also cites People v. Qualls, 21 Ill2d 252, 171 NE2d 612 (1961), where, in reversing, the Supreme Court noted (p 258):

> "There was no evidence of any other use of force, nor of bruises, marks, abrasions or contusions upon her body. There was no testimony by any examining doctor."

Defendant further argues that the prosecution has failed to establish beyond all reasonable doubt that the defendant was the perpetrator. Defendant states, "Where the identifying witness has never before observed the accused, the attendant circumstances, including the opportunity for definite identification, must be carefully weighed by the reviewing court, People v. Cullotta, 32 Ill2d 502, 207 NE2d 444 (1965), because the identifica-

tion of one person by another who has never seen him before is an opinion or conclusion of the identifying witness." Defendant argues that his mere proximity to the scene cannot substantiate an otherwise inadequate conviction.

■ In sum, the testimony of the complaining witness shows that the defendant constantly had his hands around her neck and over her mouth in such manner as to frequently cut off her air supply; that she started to scream, but defendant clamped his hand over her mouth and threatened to kill her. The resistance put up by her was sufficient to show lack of consent on her part. The police officers captured the defendant after a chase which started at the scene of the occurrence and within minutes brought him back to the complainant, who immediately identified him as the man who molested her. When defendant was captured, his clothes were in disarray and his pants were unzipped. The officers testified that when they first approached the complaining witness she was hysterical and holding some clothing in her hand. She gave the officers a description of the defendant and told them what he did and which way he fled.

■ Initially, we note that "medical testimony is not required to prove a rape, and this is true even when it is established that the victim went to a hospital after the crime occurred." People v. Boney, 38 Ill2d 23, 24, 230 NE2d 167 (1967).

■ Also, the question of the credibility of the witnesses was for the trial court's determination. In People v. Henson, 29 Ill2d 210, 193 NE2d 777 (1963), it is said (p 213) :

> "We have repeatedly held that where a case is tried without a jury the determination of the credibility of the witnesses and the weight to be given to their testimony is for the trial judge, and this

court will not substitute its judgment on such matters for that of the trial judge, who saw and heard the witnesses."

■■ We believe the pronouncements made in People v. Mack, 25 Ill2d 416, 420, 185 NE2d 154 (1962), apply here:

"We do not, however, regard these cases as establishing an inflexible rule of law requiring in all cases that the testimony of the complaining witness in a rape case must be corroborated. Indeed, we have frequently stated that corroboration is not necessary where the testimony of the complaining witness is clear and convincing. . . . The unvarying rule of law is that in a rape case, as in any criminal case, the evidence must be sufficient to establish the guilt of the defendant beyond a reasonable doubt. Where we have reversed cases because of failure to corroborate the testimony of the complaining witness, we have done so not because of any fixed rule requiring corroboration but because, upon the state of the record in the particular case, the evidence left a reasonable doubt as to the guilt of the defendant."

■ After a careful examination of this record, we conclude that the testimony of the complaining witness was clear and convincing and sufficient to support defendant's conviction. There appears to be no reason for regarding it as unworthy of belief. Also, the testimony of the police officers as to what they saw and participated in was ample evidence to corroborate her testimony. The evidence here is not so improbable or unsatisfactory as to justify a reasonable doubt of guilt. Therefore, we find no reason to disturb the judgment of the trial court.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.