**People of the State of Illinois, Plaintiff-Appellee, v. Guarzee Gray, Defendant-Appellant.**

Gen. No. 51,845.

First District, First Division.

February 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Saul H. Brauner, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

The defendant, Guarzee Gray, was charged with having committed the crime of rape. After a bench trial, the court found the defendant guilty of the offense as charged and sentenced him to the Illinois State Penitentiary for a period of not less than eight, nor more than twenty years. On appeal, the defendant's sole contention is that his guilt was not proven beyond a reasonable doubt.

At the trial, the complaining witness testified as follows: On February 13, 1966, at approximately 6:10 p. m., she was in the vicinity of 3852 W. 13th Street, in the City of Chicago, when the defendant came up behind her, pulled out a butcher knife, identified himself as "Great Guarzee," pushed her into a building, walked her down several stairs to a landing, and told her to lay down. Moments later several children came into the building, whereupon defendant pulled her up and put his hand over her mouth, threatening her life if she cried out. The complaining witness managed to scream, and defendant drew a gun and told her to be quiet or he would

kill her. After the children left the building, defendant pushed her down once again, took a scarf from her head, pulled up her skirt, removed her undergarments and a Kotex pad she was wearing due to her menstrual period which began that day, and then proceeded to rape her. When the act was completed, the defendant pushed her up the stairs to the door, and inquired if she had any money. She informed defendant she only had a quarter. Defendant took the quarter and the coat the complaining witness was wearing. As both were about to leave the building, the complaining witness saw a man at the doorway, but did not speak to him as she walked past him because defendant was behind her and she was in fear for her life. The man's identity was never ascertained. Defendant then walked her to the alley and told her to leave and not to look back or he would shoot her in the back.

The complaining witness then went to her aunt's home. From there, escorted by her cousin, she went to her home. There she related to her mother what had happened. Her mother immediately called the police, who after interrogating her, took her to the scene of the incident. At the scene she saw her undergarments and scarf, and blood was on the floor. The police then transported her to Mount Sinai Hospital for a medical examination. It was stipulated between the State and the defense that the result of the medical examination by Dr. Chans would be as follows:

> "Physical examination is negative. Pelvic examination not performed. Hymen is not intact, widely open. Vaginal smear was obtained and no sperm was seen. The doctor would further testify that there were no signs of any violence."

On February 17, 1966, the police showed the complaining witness a group of five or six individual pictures of men, of which she identified one of the men as the man who had raped her. On April 22, 1966, defendant was

112

arrested at 1540 South Ridgeway Avenue, Chicago, and brought to the 10th District Police Station where the complaining witness identified him in a showup of seven men as the one who raped her.

Defendant, testifying on his own behalf, stated he knew the complaining witness about two months, and that on the day in question he saw her on 13th Street and Springfield Avenue at about 3:30 in the afternoon and engaged in a conversation with her. He stated that she consented to have intercourse with him. Defendant and the complaining witness went to the place in question and spoke for a while. She then removed her coat and both tried to have intercourse, but some people in the building hollered to them to get out of the building, whereupon the complaining witness left the premises, leaving her coat behind. Defendant picked up her coat and then left the building. Since defendant could not find the complaining witness, he took the coat with him to his mother's house and told her to give it to the complaining witness. Defendant's mother subsequently testified that defendant brought a coat home and asked her to hold it, and if a girl named Alice came by to get it, she should give it to her. Defendant denied that he ever owned a butcher knife or a gun, nor made any mention of the complaining witness's undergarments being left at the scene.

Officer Young of the Chicago Police Department testified that on February 13, 1966, he was summoned to the complaining witness's home where he was informed by the complaining witness that she had been raped. Young escorted the complaining witness to 3852 West 13th Street, where he observed in the stairwell inside the building, the complaining witness's undergarments strewn about on the landing between the first floor and the basement. The complaining witness was then taken to Mount Sinai Hospital for further examination.

Defendant argues that he was not proven guilty of the crime of rape beyond a reasonable doubt and that the reviewing court is charged with the duty to carefully examine the evidence in rape cases. People v. Qualls, 21 Ill2d 252, 171 NE2d 612 (1961) ; People v. Scott, 407 Ill 301, 95 NE2d 315 (1951).

██ Defendant's conviction was based on the testimony of the complaining witness and officer Young, and when the trial judge has seen and heard such testimony, the reviewing court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony, unless the court's judgment rests on doubtful, improbable or unsatisfactory evidence. People v. Barney, 89 Ill App2d 180, 232 NE2d 481 (1968) ; People v. Brown, 29 Ill2d 375, 194 NE2d 326 (1964). It is argued that Dr. Chans' report of the medical examination of the complaining witness is persuasive proof that there was no intercourse between her and the defendant, and that the report's silence as to mention of any blood from the vaginal smear thereby suggests that the complaining witness was not experiencing her menstrual period and there could not have been blood on the floor as she testified.

The testimony of the complaining witness was definite, and was corroborated by the fact that police officer Young had found at the scene, the undergarments which the complaining witness identified as belonging to her. While officer Young did not mention that he saw blood on the floor or a Kotex pad, as the complaining witness had previously testified, the record fails to show any direct contradiction between the testimony of the two witnesses and the court found no reason to doubt the testimony of either witness.

It is also significant that defendant had possession of the complaining witness's coat from February 13, 1966, until the time of his arrest. Although he did not know the address, he knew where she lived, but at no time did

114

he try to contact her to return it or offer to return it. Defendant stated that the complaining witness told him she did not think it was a good idea for him to come to her home, and that he acceded to her wishes.

■ The complaining witness testified on cross-examination that she moved to Chicago from Champaign, Illinois, on January 22, 1966, and that the rape occurred about two weeks later; however, defendant testified on direct examination he knew the complaining witness for two months and had seen her at least eight times during that period in the neighborhood and in local restaurants. Nevertheless, we do not think the finding of defendant's guilt is inconsistent or affected by the conflict in the parties' testimony concerning when they knew each other. Any inconsistency of a complaining witness's testimony is not grounds for reversal of a conviction unless it is substantial and significant. People v. Adkins, 29 Ill2d 332, 194 NE2d 313 (1964).

■ We do not think the complaining witness was duty bound to cry out and resist the defendant when confronted by him, first with a knife and later on with a gun. People v. Harrison, 25 Ill2d 407, 185 NE2d 244 (1963); People v. Stewart, 74 Ill App2d 407, 221 NE2d 80 (1967). Nor do we believe the complaining witness was under a duty to ascertain the identity of the man she saw on the landing when leaving the building with defendant, or enlist his aid, since the defendant was immediately behind her, armed, and had previously threatened her life if she attempted to scream or sought to flee. Under the circumstances, resistance would have been dangerous and futile and therefore not required.

■ Our attention is called to the comment of the trial court at the conclusion of the closing arguments where the court stated:

> "THE COURT: I cannot believe that a girl, in the midst of her menstrual period, will go up under

115

the front stairs of a hallway and have intercourse or attempt to have it, walk off and leave not only her panties, also her garter belt and her coat. I have searched, and I have found no reason to doubt the story of the witness. There will be a finding of guilty. Judgment on the finding. In my opinion, there was sufficient evidence of force to justify no outcry. That the notification of the attack took place sufficiently promptly."

Upon diligent review of the entire record, we are of the same opinion. The testimony and the evidence adduced at the trial, considered as a whole, established the guilt of the defendant beyond a reasonable doubt, and therefore, the judgment of the trial court will be affirmed.

Judgment affirmed.

MURPHY and BURMAN, JJ., concur.