**People of the State of Illinois, Plaintiff-Appellee, v. Adam Rodriguez, Defendant-Appellant.**

**Gen. No. 54,387.**

First District, Fourth Division.

September 9, 1970.

Rehearing denied October 8, 1970.

Wesley S. Walton, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Robert A. Novelle and Alan M. Polikoff, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Murder. Ill Rev Stats 1965, c 38, §§ 9–1, 9–1(a)(2).

JUDGMENT

After a bench trial, defendant was found guilty of the lesser included offense of voluntary manslaughter (Ill Rev Stats 1965, c 38, § 9–2) * and sentenced to a term of 3 to 10 years.

CONTENTION RAISED ON APPEAL

Defendant was not proven guilty beyond a reasonable doubt of the offense of voluntary manslaughter.

---

* § 9–2. Voluntary Manslaughter

(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

EVIDENCE

Eileen Sanchez, for the State:

She is a daughter of the deceased, Antonio Sanchez, and on the evening of June 10, 1967, attended a party at his house where defendant was present. There were between 10 and 20 people at the party, mostly from her family. She danced with defendant, who was drinking a beer, and he told her that if she would "go away with him, he'd buy clothes, a house and a car" and she wouldn't have to go to work. After the dance, she went to the kitchen to talk with a girl friend, when defendant came up from behind and began to hug and kiss her. She walked away from him because her father, who was looking at them, came toward them. She went to the bedroom and didn't hear her father say anything to defendant.

Gladys Cortez, for the State:

She is a daughter of the deceased and was present at the party when defendant arrived at approximately 9:00 p. m. There were about 15 people present. She saw defendant's wife carrying a paper bag that contained bullets.

---

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

§ 7–1. Use of Force in Defense of Person

A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

3

Santos Gonsalez, for the State:

Deceased was his father-in-law. He saw defendant and his wife arrive at the party between 9:00 and 10:00 p. m. He was in the kitchen with defendant, deceased, and his brother, Hector, and overheard a conversation between defendant and deceased. Deceased told defendant that "in his house you have to show more respect." Defendant said that he had a gun, and then stuck his hand in his pocket. Witness noticed a bulge in defendant's pocket. Deceased told defendant that "he should go from his house and he didn't want no part of him." Deceased, who had no weapon, grabbed defendant's elbow and "was showing him to the door." He then gave defendant a small shove up the stairs and told him to get out. Defendant went out, and deceased moved up to the third step, when the witness heard a shot which he could see had been fired by defendant from outside the open window and screen door. Deceased had received a wound in his hand and rushed, with others, into the courtyard where he tried to get the gun away. Witness then saw defendant shoot deceased twice more and strike him in the face with his fist. At this point, the others were wrestling with defendant to pry the gun free, and deceased had fallen to the floor. The witness picked up a soda pop bottle, struck defendant from behind, and continued to strike defendant after he "went down." Defendant's wife was hitting the witness with some object at this time.

Hector Gonsalez, for the State:

His testimony with respect to the incident was similar to that of his brother, Santos. When he was coming out of the door, the last two shots were fired by defendant, and he saw that defendant and deceased were about two feet apart. Neither he nor his brother nor Antonio Sanchez, Jr., nor deceased had struck or threatened defendant prior to this time. He succeeded in taking the

4

gun away from defendant. A gun was identified as the one used by defendant and was admitted into evidence.

George Sams, for the State:

He is a detective and arrested defendant on June 11, 1967, at approximately 4:45 a. m. At the time of the arrest, defendant had a bandage on his chest six inches long and two inches wide. He had conversations with the Gonsalez brothers, who stated that, after the shooting, they had struck defendant with a beer bottle. Santos Gonsalez told him that defendant had had a gun in his belt. He had a conversation with defendant at the police station and took a written statement from him which was introduced into evidence without objection. The statement was essentially the same as his testimony, set forth below, except he affirmatively stated that when someone handed him a bag with a gun in it, he fired three or four shots; then, when the gun was taken from him, he took the bag, which had bullets in it, and he and his wife ran home.

Jose Mercado, for the defense:

He knew defendant and saw him on the day in question on the ground in an alley where fifteen people were hitting him. He watched for two minutes from a distance of twenty feet. The alley was approximately 20 feet wide and he was standing to the side. He was attracted to the alley because of screaming and "everything going on," and saw defendant being beaten. He heard shots, although he didn't see who fired them, and ran.

Felix Alvarez, for the defense:

He was with Jose Mercado on the night in question and saw defendant, whom he knew, "on the floor" in an alley. He did not see anyone else.

Carmen Rodriguez, for the defense:

She is defendant's wife and attended the party with him. They arrived at 8:00 p. m. or 9:00 p. m. and "the

5

lady of the house invited my husband to dance." Deceased then told the lady not to dance again with defendant. Defendant then went to the kitchen to get a beer and deceased grabbed him around the neck and told him that he wanted to fight. Defendant said he didn't want to fight, but deceased took him out the rear door. Deceased's son had a bat with which he hit defendant. The witness was hit in the face with the bat by Santos Gonsalez. There were fifteen people, all hitting her husband with bats and clubs for more than an hour while he was on the floor. She "took him away" in a cab to prevent his being killed. He was badly beaten and full of blood.

Adam Rodriguez, in his own behalf:

He had known deceased as a friend for seven years, and deceased asked him to come to the party. He and his wife went and there were between 25 and 28 people. He danced with deceased's daughter and wife and drank two beers. He then left for ten minutes and bought eighteen cans of beer and a pint of whiskey. He returned and danced with deceased's wife. After the dance, deceased told her "to go to sleep, son of a bitch, don't dance no more with him." Deceased then came into the kitchen, grabbed him by his collar, and pushed him out the door into the alley. Deceased's son hit him with a bat across the back of the head. They knocked him to the floor and the "whole bunch" jumped him, and he was beaten across his chest and head. He was hit with a club and a rubber water pipe, and had two of his front teeth kicked out. This continued for ten minutes when someone dropped a bag and said, "there is a gun inside, defend yourself." He was not carrying a gun with him, nor was his wife carrying a bag at the party. Someone said he fired a few shots, but he didn't know if he did. His wife pulled him into the alley to try to straighten him up because of a pain in his neck. They ran down the

alley because "the bunch" came toward them again and went home. He called his mother and told her to call the police "to come pick him up" because "they said there was a couple of shots fired." He made a statement which he signed. He spent six days in the County Jail hospital. His head and chest were swollen and he was bleeding from the nose and mouth.

OPINION

Defendant's sole contention on appeal is that the evidence is insufficient to sustain a conviction for voluntary manslaughter under either paragraph of the statutory definition of that crime as quoted in the footnote above.

Primarily, he argues that the testimony of the State's witnesses, if believed, could not support a conviction for that crime under paragraph (a) because there is no evidence of serious provocation that would have caused defendant to act "under a sudden and intense passion." In the alternative, he asserts that if the testimony of the defense witnesses is believed, then the only conclusion to be drawn is that defendant justifiably acted in self-defense or that his belief in the necessity for the use of deadly force was reasonable under paragraph (b).

■■ The proposition is correct, as stated by defendant, that without evidence of serious provocation, mere words not being sufficient, a finding of voluntary manslaughter under paragraph (a) cannot stand, citing People v. Lopez, 93 Ill App2d 426, 235 NE2d 652; People v. Brown, 78 Ill App2d 327, 223 NE2d 311; People v. McMurry, 64 Ill App2d 248, 212 NE2d 7; People v. Bailey, 56 Ill App2d 261, 205 NE2d 756. While there exist significant differences in the testimony adduced by the State and by defendant, we find that, when the evidence is taken as a whole, there is a definite resolution of the issue of provocation. It is apparent that deceased displayed a hostile attitude toward defendant during the

course of the party. This is borne out by the testimony of Eileen Sanchez who stated that deceased saw defendant hug and kiss her and then come toward them. Then, as related by the Gonsalez brothers, a quarrel ensued in which deceased and defendant exchanged strong words, with defendant stating that he had a gun. Deceased ordered him to leave the house and grabbed his elbow, shoving him toward the door. Defendant's wife's account was that deceased attempted to prod defendant into a fight and collared him about the neck before taking him outside. Defendant's own version was that deceased approached deceased's wife after she had danced with defendant, and told her to stop dancing with him and to go to sleep; that deceased then came to the kitchen and grabbed defendant by the throat and neck and pushed him outside where he was hit with a bat. This testimony, regardless of the fact that some of it originated with defense witnesses, indicates that more than "mere words" passed between deceased and defendant. It was sufficient to warrant the court's finding that, at the time of the killing, defendant was "acting under a sudden and intense passion resulting from serious provocation" by deceased. People v. Cooke, 93 Ill App2d 376, 236 NE2d 97.

██ With respect to defendant's assertion that he acted in self-defense, this is essentially an issue of fact for the trial judge whose duty it was to resolve conflicts in the testimony in the light of paragraph (b) of the section defining voluntary manslaughter. See footnote above. People v. Johnson, 108 Ill App2d 150, 156, 247 NE2d 10. Here, the trial court obviously believed the testimony that defendant fired the fatal shots before he was attacked by deceased's relatives, and rejected the contrary account of the incident by defense witnesses. People v. Jordan, 18 Ill2d 489, 492, 165 NE2d 296. On this state of the record, we will not substitute

our judgment for that of the trier of fact. People v. Parker, 120 Ill App2d 71, 78, 256 NE2d 67.

We conclude that the evidence was sufficient to establish guilt under either paragraph (a) or (b) of section 9–2 of the Criminal Code. Ill Rev Stats 1965, c 38, § 9–2(a) and (b).

Accordingly, the judgment is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.