THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MATTIE LOUISE BEATHEA, Defendant-Appellant.

(No. 58098;

First District (2nd Division)—November 26, 1974.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Mattie Louise Beathea, defendant, was found guilty after a bench trial of the crime of voluntary manslaughter in violation of section 9—2 (a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(a)). She was sentenced to a term of 1 to 3 years. Defendant appeals, arguing (1) that the evidence was insufficient to establish her guilt beyond a reasonable doubt; (2) that the preliminary hearing testimony of Emily Turner, who had died prior to trial, was improperly admitted at trial; (3) that she did not knowingly and understandingly waive her right to a trial by jury; and (4) that she was denied equal protection of the law when the trial judge refused her request to be placed on the work release program on the basis that such programs are available only to men.

At trial, Theresa Martin, the sister of Emily Turner, testified that on June 19, 1971, at approximately 8:45 P.M., she left her apartment at 218 E. 43rd Street, Chicago, Illinois, and went to the front of the building to get her children who were outside playing. Present were Emily Turner, Robert Fleming and Charles Thompson. Emily Turner went to the corner drug store. Thereafter, defendant came out of the building and asked where the short lady was who had been arguing with her daughter. Charles Thompson asked defendant what she wanted, and several words were exchanged. Theresa Martin and Charles Thompson walked down the street to meet Emily Turner as she came out of the store. As the three of them returned to 218 E. 43rd Street, defendant was standing in front of the building. Emily Turner and defendant began talking. Defendant said, "Do you want to whip my two daughters?" Emily Turner replied that she did not want to argue with her but that she wanted to tell her what her daughter had said. Defendant slapped Emily Turner and a fight ensued. Defendant took out a knife and attempted to stab Emily Turner, cutting her dress. Charles Thompson intervened and said, "Why don't you try to talk it over?" Defendant then shoved Thompson back onto a car and stabbed him in the chest. Thompson did not have a weapon.

Over defense objections, the preliminary hearing testimony of Emily Turner was admitted into evidence. Emily Turner had died on January

11, 1972, and was therefore unavailable to testify. At the preliminary hearing, Emily Turner had testified that on June 19, 1971, she came out of a drug store at 43rd near Indiana and met Charles Thompson and Theresa Martin. The three of them proceeded to 218 E. 43rd Street where they met the defendant. Defendant struck her and attempted to stab her. Charles Thompson stepped in between them and attempted to stop the fight. Defendant pushed Thompson down on a car and stabbed him in the chest. Charles Thompson did not have a weapon in his possession.

Robert Fleming testified in substantial accord to Theresa Martin and Emily Turner.

Albert Fitzpatrick, a Chicago Police officer, testified that in the evening hours of June 19, 1971, he responded to a call and proceeded to 218 E. 43rd Street, Chicago, Illinois. There he observed a group of people in the street and a man lying on the sidewalk, bleeding from his chest. He interviewed Emily Turner, Robert Fleming and Theresa Martin. Emily Turner appeared to have been drinking. Pursuant to information received from these people, he proceeded to defendant's apartment where he informed her that there had been a stabbing in front of the building. Defendant admitted that she had done the stabbing. Defendant was transported to the police station where she was advised of her constitutional *Miranda* warnings. Thereafter, defendant stated that she and Emily Turner had an argument in front of the building because Emily Turner had been calling her children vicious names. As they were arguing, the deceased, Charles Thompson, interceded and was stabbed. Defendant stated that she had taken the weapon back to her apartment, washed it and put it on the kitchen shelf. Defendant did not state that she received any physical injury as a result of the altercation. Police officers went back to defendant's apartment where the knife was recovered.

William Jannotta, a Chicago police investigator, testified that on June 19, 1971, he was assigned to the stabbing of Charles Thompson. Pursuant to his investigation, he interviewed Emily Turner, Robert Fleming and Theresa Martin. Emily Turner appeared to have been drinking. He also interviewed the defendant. After defendant was given her constitutional *Miranda* warnings, defendant stated that she had been arguing with Emily Turner in front of the building and as she started to return to her apartment, the deceased stopped her and attempted to grab the knife that she had in her hand. During the struggle, the deceased was cut.

It was stipulated that if Dr. Jerry Kearns, the coroner's pathologist,

were called to testify, he would state that on June 20, 1971, he performed an autopsy on the body of Charles Thompson. In his opinion, Charles Thompson died of a stab wound to the chest and heart.

It was also stipulated that if George N. Christopoulos, the coroner's toxicologist were called to testify, he would testify that an analysis of the blood of Charles Thompson showed the presence of .229 milligrams of ethanol.

Defendant testified that on June 19, 1971, between 8:30 and 9 P.M., her daughter, Rita Griggs, came to her apartment and told her that Emily Turner had been swearing at defendant's children. She testified that she then went to the front of her building with Mrs. Lamb and her two daughters, Rita Griggs and Mary Louise. Shortly thereafter, Emily Turner returned to the building and defendant asked her why she had slapped and cursed her children. Emily Turner laughed and said, "Those damn bitches." Defendant testified that, as she turned to go back into the building, Charles Thompson grabbed her arm, struck her and knocked her to the ground. He hit her in the face twice and kicked her on the leg. Defendant stated that she had a knife in her pocket which she had brought from her apartment. During the fight someone said that Charles Thompson had a knife, though she herself at no time saw a knife in the hands of Charles Thompson. She took her knife out of her pocket and stabbed the deceased once in the chest. She then returned to her apartment and called the police.

Rita Griggs and Mary Louise Beathea, the defendant's daughters, testified in substantial accord with the defendant's testimony. They stated that they observed a knife in the hand of Charles Thompson.

■■  Defendant's first contention is that she was not proven guilty of voluntary manslaughter under section 9—2(a) beyond a reasonable doubt. Defendant reasons that the evidence presented at trial gives rise to only two possible findings; either defendant was guilty of murder or the killing was justifiable by reason of self-defense. Defendant argues that the evidence adduced by the State was totally insufficient to establish that she was acting under sudden and intense passion resulting from serious provocation. Voluntary manslaughter is defined by section 9—2 (a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(a)), which states:

> "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation * * *."

The sufficiency of the provocation to cause a sudden and intense passion is a matter to be determined by the trier of fact. (*People v. Stowers*,

133 Ill.App.2d 627, 273 N.E.2d 493; *People v. Binion,* 132 Ill.App.2d 257, 267 N.E.2d 715.) One of the categories of serious provocation which has been well recognized is substantial physical injury or assault. *People v. Clark,* 15 Ill.App.3d 756, 305 N.E.2d 218.

■■ In the case at bar, the evidence established that the defendant and Emily Turner were arguing in front of a building at 218 E. 43rd Street when Charles Thompson intervened. There was evidence that both Thompson and Turner had been drinking on the evening in question. By defendant's own testimony, Charles Thompson struck her in the face several times, knocked her to the ground and kicked her leg. Defendant testified that, as she was pushed up against the car, she took a knife and stabbed Thompson once in the chest. Several witnesses testified that Thompson did not have a weapon. Under these circumstances, the trial court, acting as trier of fact, had ample evidence from which to conclude that the defendant was provoked by physical attack and was under a sudden and intense passion resulting from serious provocation by the deceased. (See *People v. Jenkins,* 10 Ill.App.3d 995, 295 N.E.2d 587; *People v. Rodriguez,* 129 Ill.App.2d 1, 262 N.E.2d 815.) A reviewing court will not reverse a finding of guilt of voluntary manslaughter unless the evidence is so unsatisfactory or improbable as to justify a reasonable doubt as to the defendant's guilt. *People v. Love,* 10 Ill.App.3d 554, 294 N.E.2d 737.

■■ Defendant next contends that the use of the preliminary hearing testimony of Emily Turner as evidence at the trial was improper. Defendant argues that, since the prior testimony was at a preliminary hearing and not at a trial, it did not qualify as an exception to the hearsay rule, and that the use of the preliminary hearing testimony at trial denied her the right to cross-examine witnesses as guaranteed by the Sixth Amendment to the United States Constitution. The law is clear that the testimony of a witness at a preliminary hearing is admissible into evidence at trial when the witness is unavailable without fault on the part of the State and when ample opportunity to cross-examine had existed at the preliminary hearing. The rule is stated in 3 Wharton's Criminal Evidence § 650 (13th ed. 1973):

> "As an exception to the hearsay evidence rule, the testimony of a witness at a *preliminary hearing* or former trial may be allowed in evidence at a subsequent trial if a proper foundation has been laid, including a showing that the witness is no longer 'available.'" (Emphasis added.)

In *California v. Green,* 399 U.S. 149, 166, the United States Supreme Court, in discussing this issue, said:

> "In the present case respondent's counsel does not appear to

have been significantly limited in any way in the scope or nature of his cross-examination of the witness Porter at the preliminary hearing. If Porter had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, as long as the declarant's inability to give live testimony is in no way the fault of the State."

The law as stated in *Green* had been applied in this State. *People v. Coburn*, 20 Ill.App.3d 60, 313 N.E.2d 270; see also *Bergen v. People*, 17 Ill. 426; *People v. Holman*, 313 Ill. 33, 144 N.E. 313; *People v. Jackson*, 41 Ill.2d 102, 242 N.E.2d 160; *People v. Burton*, 6 Ill.App.3d 879, 286 N.E.2d 792.

■■ In the case at bar, Emily Turner had testified at the preliminary hearing. At that time, defendant was represented by the same counsel who represented her at trial. Counsel cross-examined Emily Turner in a comprehensive fashion and was not limited in any way. Prior to trial, Emily Turner had died and was therefore unavailable to testify. Under these circumstances, the admission into evidence at trial of Emily Turner's preliminary hearing testimony was proper.

Defendant's next contention is that she did not knowingly and understandingly waive her right to a trial by jury. The transcript demonstrates that defendant was represented by privately retained counsel, who informed the trial judge that it would be a bench trial. Thereafter, the following occurred:

"THE COURT: Miss Beathea, in the State of Illinois you have a right to a trial by jury. Do you understand that?

MR. STARKE [defense counsel]: We are waiving a jury.

THE COURT: Do you understand that you have a right?

MRS. BEATHEA: Yes.

THE COURT: Do you wish to waive that right and be tried by me, counsel says, is that right?

MRS. BEATHEA: Yes.

THE COURT: Will you so indicate by signing what we call a jury waiver?

MR. STARKE: Sign here, please.

THE COURT: Of course I imagine Mr. Starke the plea is not guilty?

MR. STARKE: That's right. Jury waived."

This court has often stated the rule that there is no specific formula for determining whether a defendant's waiver of the right to a jury trial

is knowingly and understandingly made. Each case depends upon the particular facts and circumstances of that case. (*People v. Richardson,* 32 Ill.2d 497, 207 N.E.2d 453; *People v. Diesel,* 128 Ill.App.2d 388, 262 N.E.2d 15.) A lengthy explanation of the consequences of a jury waiver is not a prerequisite to the validity of that waiver. *People v. Geary,* 8 Ill.App.3d 633, 291 N.E.2d 13.

■■ Here, privately retained counsel informed the trial judge that there would be a bench trial. Thereafter, defendant herself was specifically admonished that she had a right to a trial by a jury. Defendant stated that she understood her rights and wished to waive her right to a trial by jury. Defendant thereafter voluntarily signed a jury waiver. Under these circumstances, we conclude that defendant knowingly and intelligently waived her right to a trial by jury. *People v. Sanders,* 14 Ill.App.3d 826, 303 N.E.2d 552; *People v. Hill,* 102 Ill.App.2d 77, 243 N.E.2d 491.

Defendant's final contention is that she was denied equal protection of the laws when her request that she be placed in a work-release program was denied on the basis that such programs are not available to women, but are available only to men. The State, in a supplemental record, has pointed out that defendant was paroled from the penitentiary on April 17, 1973, with her parole to expire on November 17, 1974.

■■ Here, defendant does not seek a reversal of her conviction, but requests only that her case be remanded for resentencing or, in the alternative, remanded for a hearing for placement on the work-release program. Even if we were to grant defendant's prayer for relief, it would in no way benefit her. Defendant has already been paroled and being admitted to the work-release program would require her to again be incarcerated. A remandment for resentencing at this time would not serve any useful function to the defendant. Under these circumstances, defendant's argument is moot and need not be considered.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HAYES, P. J., and DOWNING, J., concur.