(No. 38674.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIE WALKER, Plaintiff in Error.

*Opinion filed January 25, 1966.*

W. Thomas Coghill, Jr., of East St. Louis, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and John M. Karns, Jr., State's Attorney, of Belleville, (Fred G. Leach, Assistant Atorney General, and Charles E. Hamilton, Special Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Defendant was convicted of rape after a jury trial in the circuit court of St. Clair County, and sentenced to imprisonment for a term of thirty years. On this writ of error, defendant contends he was denied his statutory and constitutional rights to a speedy trial, and that the construction heretofore placed by this court upon the "four-month rule" (Ill. Rev. Stat. 1959, chap. 38, par. 748) denies him equal protection of the laws under the fourteenth amendment to the United States constitution.

The prosecuting witness testified that at approximately 3:20 o'clock A.M. on August 12, 1961, she was awakened at her home in Centreville, Illinois, for the purpose of admitting her brother to the house. She thereafter returned

to bed. When she awoke again, a man was bending over her and touching her cheek with a pistol. He requested her to go with him and admonished her not to cry out. The assailant had "something white draped over his head" which concealed his face. After some conversation during which the man threatened to kill the prosecuting witness's children and placed a gun at her baby's temple, the prosecuting witness agreed to go with the assailant. At this time the man's face had become visible, and the prosecuting witness had an opportunity to observe his features. She was then forced out of her home and across the street to a churchyard, where the assailant committed certain unnatural acts and the rape charged in the indictment. The assailant then ordered the prosecuting witness to lie on her stomach after which he left the churchyard.

She immediately ran to a neighbor's house and complained of the rape. Harold Cox, one of the occupants of this house, left in pursuit of the assailant. The prosecuting witness returned to her home and sent her oldest daughter to call the police.

Cox testified that after the prosecuting witness had given him a description of her assailant and had told him in which direction the man had fled, he went out into the street, observed a man, and gave chase. The man, upon seeing Cox, fled into some bushes. Cox recognized the man as the defendant, a person he knew previously as "Bubba". As Cox searched for the man, he heard a lady, subsequently identified as Mrs. Gene Thomas, scream. Thereupon a man emerged from the Thomas home with a gun in his hand. Mr. Thomas was running after him. Cox identified defendant as the man that Thomas was pursuing.

Mrs. Thomas testified that a man she identified as defendant awakened her in her home early on the morning of August 12, 1961. She saw the man was a stranger and screamed. The man hit her in the face with a gun and ran

out of the house with Mr. Thomas in pursuit. Thomas lost sight of the fleeing man when the latter jumped a fence and continued his flight.

This testimony and that of Cox concerning the occurrences at the Thomas home was allowed at the trial over defendant's objection that it was prejudicial to permit a showing of another offense.

Police officer Clinton Spearman testified that he arrested defendant at the latter's home at 4432 Gay Street, Centreville, at about 6:10 o'clock A.M. on August 12, 1961. The house was also occupied by defendant's mother and sister. Defendant was immediately transported to the home of the prosecuting witness, where officer Spearman asked the latter if defendant was the man who had assaulted her. Upon receiving an affirmative reply, officer Spearman took defendant to the Centreville police station. Officer Spearman further stated that he returned to defendant's home around 11:00 o'clock A.M. on the day of the arrest and inquired as to the whereabouts of a gun. After some hesitancy, defendant's sister led the officer to or pointed out the location of a gun. The weapon was seized and later introduced as evidence on behalf of the State over defendant's objection. The prosecuting witness identified this gun as the one used by her assailant.

Defendant was incarcerated on the day of his arrest, August 12, 1961, was not admitted to bail, and was not brought to trial until December 11, 1961, 122 days after he was taken into custody. It is undisputed that defendant was brought to trial within four calendar months of his commitment, but he argues that the statute must be construed as contemplating 120 days; otherwise persons arrested in different months might be subjected to disparate amounts of pretrial incarceration before the statute would entitle them to discharge. Thus "* * * those arrested in January, February or November must be set free in 120 days; those arrested in March, April, June, August or Sep-

tember must be set free in 122 days, but it is not necessary to release those arrested in May, July or October until they have been held 123 days except in leap years when these periods would be altered."

We have twice before considered the objection made here by defendant and have found it to be wholly without merit. (*People* v. *Gilbert,* 24 Ill.2d 201; followed in *People* v. *Hurst,* 28 Ill.2d 552, but *cf. dicta* in *People* v. *Utterback,* 385 Ill. 239, 242.) We held that when the General Assembly stated "four months" it meant just that—four months. Merely because particular suspects committed in different months might be subjected to a few days more or less confinement before they are entitled to discharge does not require a holding that "four months" means 120 days. The ready answer to defendant's contention of denial of equal protection of the law is that all those committed, in whatever month, are entitled to discharge if they are not brought to trial within four calendar months, unless, of course, any delay is attributable to themselves. As stated previously: "* * * the period 'is computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or specified succeeding month, except where the last month has not so many days, in which event it expires on the last day of that month [citing cases]' ". (*People* v. *Gilbert,* 24 Ill.2d 201, 203.) This is sufficient, in our judgment, to preclude constitutional objection under the fourteenth amendment. The circuit court did not err in denying defendant's motion for discharge.

It is next contended that the trial court erred in denying defendant's motion to suppress evidence obtained without a search warrant. Defendant was arrested at his home around 6:10 to 6:45 o'clock A.M. He was then taken to the home of the prosecuting witness and subsequently to the police station. One of the officers returned to defendant's home, which he shared with his mother and sister. There

is some confusion in the testimony concerning whether defendant was present at his home at this time, but, in any event, both his mother and sister, who lived in this home and upon this record must be held to have had equal rights to the use and possession of the premises, were there. The requested gun was acquired pursuant to the sister's consent. As observed in *People* v. *Shambley*, 4 Ill.2d 38, at page 42: "the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search and the evidence thus disclosed can be used against either." We believe the defendant's sister could properly consent to the seizure of the gun in question. Defendant, however, argues that his 24-year-old sister is "crazy" and thus incompetent to consent to any search and seizure concerning the premises. We do not agree, for the only evidence indicating that the sister was not of sufficient capacity is a statement by her mother that she was "minded" and acts "sort of peculiar". This is clearly insufficient to establish the absence of adequate intelligence or capacity to authorize a search.

Defendant further argues that this evidence should have been suppressed because it was acquired after defendant was taken into custody but before he was taken before a magistrate. We believe that this evidence would not be rendered inadmissible even if, as defendant argues, it was acquired during a period of "unnecessary delay", for there is absolutely no showing that any information concerning this evidence was coercively acquired from defendant during any period of detention. The duration of defendant's detention here simply has no relevance whatsoever to the question of the admissibility of the weapon as evidence against him.

It is further contended by defendant that the trial court erred in allowing evidence of another crime (the occurrence at the Thomas residence) to be admitted at the trial and

that a mistrial should have been declared. The general rule precludes admission of evidence concerning unrelated crimes (*People* v. *Greeley,* 14 Ill.2d 428; *People* v. *Battle,* 24 Ill.2d 592), but such evidence may properly be employed to show identity of the accused. (*People* v. *Mikka, 7* Ill.2d 454, 461, and cases there cited.) We believe the testimony complained of clearly admissible for such purpose. See also *People* v. *Davis,* 14 Ill.2d 196.

Other questions raised by defendant are of little merit, but, in any event, since they were not raised in defendant's written motion for a new trial, they are deemed waived. *People* v. *Irwin,* 32 Ill.2d 441.

The judgment of the circuit court of St. Clair County is accordingly affirmed.

*Judgment affirmed.*