THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WOODIE ROBINSON, Defendant-Appellant.

(No. 55628; ▮▮▮▮▮

First District—February 4, 1972.

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran, Jr. and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Thomas Mulroy, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant with his co-defendant, Bernard Jackson, was indicted and tried for the offense of armed robbery. The court, sitting without a jury, found defendant guilty of plain robbery and sentenced him to probation for three years, the first four months of which to be served in the Cook County Jail. Co-defendant Jackson was found not guilty. On appeal defendant contends:

(1) that pre-trial identifications of him constituted a denial of due process which rendered the subsequent in-court identification testimony inadmissible, and

(2) that he was not proven guilty beyond a reasonable doubt.

The evidence presented by the State is summarized as follows:

Susan Hadac testified that on June 16, 1970, she was working as a cashier at Certified Food and Liquors, 1906 West 69th Street. At approximately 10:15 A.M. two male negroes walked into the store and purchased some inexpensive items. As the witness was making change to complete the transaction she was handed a note which told her to put the money from the cash register into a bag. She reopened the cash register and put a package of ten dollar bills into a paper bag and one of the men then reached into the open cash drawer and grabbed a package of five dollar bills. The other man turned toward the courtesy booth, but, upon hearing the manager coming, he and the other robber ran out of the store. The shorter man, whom she never saw again, wore a red or bright colored shirt. The taller man wore a white T-shirt partially covered by a ripped shirt. She testified that Jackson was one of the men who robbed the store but she was not completely sure of her identification. Shortly after the robbery she attended a line-up consisting of four men but she was unable to make a positive identification of any of them.

Peter Popik testified that on June 16, 1970, he was working as the manager of Certified Food and Liquors at 1906 West 69th Street. At approximately 10:15 A.M., while in an elevated area of the courtesy booth which overlooked the check-out area, he saw two men, one of whom he identified as Jackson, approach the check-out counter where they purchased some small items. As the girl at the counter closed the

cash register one man handed her a note. The girl opened the register and removed money which she placed in a paper bag. Jackson started to come toward the courtesy booth, but, as the witness came down to floor level, both robbers fled the store with Popik in pursuit. The robbers entered a car driven by a third man, a negro who was wearing a red shirt and whom Popik identified in court as defendant. The witness attempted to pull the driver out of the car as he attempted to start it. At the driver's command Jackson, who was sitting in the back seat, lunged at Popik with a butcher knife forcing him to back away from the vehicle. The vehicle then started, proceeded approximately ten or fifteen feet and stalled thereby enabling Popik to copy the license number and again approach the car before it sped away. In a few moments a car driven by a customer of the store came upon the scene. Popik got into the car and together with the driver gave chase. After a short time they flagged down a police car which Popik entered. After hearing Popik's story, the police, with Popik in the car, continued the pursuit of the robbers. The robbers' car was found abandoned in the 6700 block of Peoria Street. Popik was then transferred into an unmarked police car to cruise the area in search of the robbers. After approximately ten minutes they received a radio call to return to the abandoned car because the police had "two suspects." Upon returning to the car he saw defendant and Jackson, the only two negroes at the scene, standing near the car. Popik recognized both men, defendant as the driver of the getaway car and Jackson as one of the men who entered the store. Later, at a police station, the witness viewed the two men again, and reaffirmed that he was sure of their identity. While in the first police car he gave the following general descriptions to the police: the driver whom Popik subsequently identified as defendant was a short, thin male negro, approximately 40 years old, medium weight and wore a short sleeved sports shirt and wash pants; the robber, whom Popik identified as Jackson, was a male negro in his late teens and wore wash pants and a short sleeved sports shirt; the other robber was also a male negro in his late teens and wore wash pants and a short sleeved sports shirt. When Popik viewed the two suspects at the scene of the abandoned car, defendant was dressed the same as he was at the time of the struggle, but Jackson's clothing was different from that which he wore at the time of the robbery. When Popik gave the description to the police officers, he did not include in that description any mention of the suspects' complexion, facial hair or hair style, and at the time of the struggle he did not notice anything unusual about defendant's face.

Helen Sennese testified that at 10:15 A.M. on June 16, 1970, she was working in the courtesy booth at the Certified Store at 1906 West 69th

Street. Two men came into the store, one walked to the cashier and the other approached the witness with a gun. When the store manager came, both robbers ran out of the store. Approximately 30 minutes after the robbery the witness viewed a line-up and identified Jackson as one of the robbers.

Police Officer John Finnegan testified that he was cruising with other officers in a marked squad car. As they approached 67th Street and Morgan they were flagged down by a man who stated that he had "just been involved in a robbery." The man got into the police car, and, together with the police, searched the area for the getaway car which the man described. They located the car, which was unoccupied and unlocked, at 6707 South Peoria. The complaining witness then entered another police car to tour the area while Finnegan parked close to the abandoned vehicle. Within a short time two men, defendant and Jackson, approached and attempted to enter the abandoned vehicle. As defendant and Jackson stood near the abandoned vehicle talking to Finnegan and other police officers, the complaining witness returned to the scene and immediately identified defendant. Both defendant and Jackson were then arrested. Neither had a large amount of money at the time of their arrest. Finnegan did not remember either the clothing defendant wore at the time of his arrest or any scars on defendant's face.

The evidence presented by the defense is summarized as follows.

Perry Bradley testified for the defense that he knew defendant for three years and Jackson for six years. As Bradley left his house at 9:00 A.M. on the morning of June 16, 1970, to go to the grocery store, he saw the police near a car parked in front of his house. He believed this car belonged to defendant. At approximately 9:10 A.M., as Bradley was returning from the store, he saw defendant, with Jackson and two other young men, standing in a vacant lot at 68th and Green. Bradley informed defendant of the interest of the police in his car and drove defendant and Jackson to the place where the car was parked. As he pulled next to the car, Bradley stopped to allow defendant and Jackson to leave the car and then drove on to find a parking space. He returned to find both defendant and Jackson handcuffed. On cross-examination, Bradley demonstrated his lack of certainty with respect to the time the events of June 16, 1970 took place.

Wilbert Belser testified that on June 16, 1970, he was working as the assistant manager of a food store at 6810 South Halsted. At approximately 10:00 A.M., as he went outside of the store to put money in a parking meter, he saw and greeted Jackson, whom he had known for eight years.

Woodie Robinson, the defendant, testified that he is five feet, six inches tall, weighs 138 pounds and is 43 years old. On the day of his

arrest he wore a brown shirt, black pants and a mustache and had a two and a half to three inch scar on the left side of his face. He woke up at approximately 9:30 A.M. or 10:00 A.M. on June 16, 1970, and went out to his car to get a package of cigarettes, but he found that the car was gone. Defendant then walked to the gas station at 67th Street and Halsted where he was going to telephone the police. Instead he met Jackson with whom he walked to 67th Street and Green where they joined some other people who were standing on the corner. They all talked for a while and defendant decided to go to the police station to report the theft, but before he left "Percy" drove up and said, "Woodie, your car is parked down in front of my house and the police have it." Defendant responded, "Come on, take me down there." At defendant's request Jackson went along. Upon their arrival at defendant's car a police officer asked defendant if it was his. Defendant responded affirmatively and was arrested and handcuffed. Defendant did not know anything about the robbery and did not have the keys to his car when he was arrested.

Bernard Jackson testified that he was 18 years old. On the day of his arrest he wore tan levis, a black leather jacket, a white T-shirt and a mustache and had only $1.35 in his possession. While returning from a laundromat on the morning of his arrest, he met defendant and they discussed the car theft and what action defendant should take. Perry Bradley drove up and informed defendant of the whereabouts of his car. Bradley drove defendant and Jackson to the car. When defendant told the police it was his car he was arrested. Jackson said he did not rob the store. The line-up at which Jackson was identified consisted of himself and shorter men.

OPINION

(1) Defendant's first contention relates to two confrontations wherein defendant was viewed and identified by Popik. The first of these confrontations occurred near defendant's car within 30 minutes of the robbery. He urges that the nature of this identification procedure made his identification as a participant in the robbery inevitable. Prompt "on-the-scene" identification procedures were recently discussed by the Illinois Supreme Court in *People v. Elam* (filed January 14, 1972), Docket No. 42441, where the court repeated its holding that this type of confrontation does not violate the principle announced in *United States v. Wade* (1967), 388 U.S. 218; *Gilbert v. California* (1967), 388 U.S. 263; and *Stovall v. Denno* (1967), 388 U.S. 293. In so doing the Court quoted with approval the language in *Bates v. United States* (D.C. Cir. 1968), 405 F.2d 1104, 1106 where the court said:

"There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about mis-identification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time."

In further discussion of the *Bates* case, our Supreme Court went on to say:

"The court further observed that such procedure fosters the desirable objectives of fresh, accurate identifications which may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing offender while the trial is fresh."

See also *People v. Young* (1970), 46 Ill.2d 82, 87 and *People v. McMath* (1968), 104 Ill.App.2d 302, 314 *affd.* (1970), 45 Ill.2d 33, 36 *cert.* denied (1970), 400 U.S. 846.

■■ In his reply brief defendant urges that the theory of *People v. Young, supra,* and *People v. McMath, supra,* is only applicable in those cases wherein "hot pursuit and continuity of observation" are involved. This theory is dispelled by an analysis of the decision in *People v. Elam, supra.* In that case the Court applied the theory of *People v. Young, supra,* to a situation in which there was no continuous observation of defendant from the time of the offense until his apprehension. Rather the defendant was apprehended after being observed on a street corner by the complaining witness who, shortly after being robbed, had been cruising the area with the police in an attempt to locate the offender. Thus Popik's identification of defendant near his car shortly after the robbery did not constitute a denial of due process.

■■ The second confrontation of which defendant complains was conducted at a police station where the defendant, while handcuffed, was brought before Popik who was asked if he was sure of the defendant's identity. In the instant case as in *People v. McMath* (1970), 45 Ill.2d 33, 37 *cert.* denied (1970), 400 U.S. 846, there were no circumstances to justify such a confrontation. But just as the Supreme Court did in *People v. McMath* we find that while the police station confrontation was unnecessarily suggestive it was not so conducive to irreparable mistaken identity that defendant was denied due process. There is no deprivation of due process where an in-court identification is based on an origin independent of a suggestive confrontation. Popik's in-court

identification did have such an independent origin, this being the close observation he had of defendant while struggling with him in trying to prevent his driving away in the car immediately after the robbery.

(2) Defendant's contention that he was not proven guilty beyond a reasonable doubt revolves around three facets of the evidence presented at trial: (a) the failure of the identification witness to notice and describe defendant's mustache and scar, (b) suggestive tactics used by the police which contributed to Popik's identification of defendant, and (c) defendant's uncontradicted alibi.

■■ The question of the identifying witness' failure to notice or describe defendant's mustache and scar is controlled by *People v. Catlett* (1971), 48 Ill.2d 56, 63, which states that "precise accuracy in describing facial characteristics is unnecessary where an identification is positive." (See also *People v. Miller* (1964), 30 Ill.2d 110, 113.) Additionally, Popik's failure to mention defendant's facial characteristics is not a prerequisite to identification but merely goes to the weight to be attached to the identification testimony. *People v. Tunstall* (1959), 17 Ill.2d 160, 163.

■■ Defendant argues that suggestive police tactics, *i.e.,* the use of the show-up as opposed to a line-up, influenced his identification by Popik. However, insofar as the tactics of the police did not require a suppression of the identification testimony, consideration of this contention also relates to the weight and credibility to be accorded the identification testimony. *People v. Bass* (1968), 101 Ill.App.2d 259, 266 and *People v. Brown* (1967), 86 Ill.App.2d 163, 171.

■■ Defendant also contends that a reasonable doubt of his guilt was raised by his alibi testimony which he belives was corroborated by Bradley's testimony, the improbability of a guilty person's return to the getaway car in full view of the police and his failure to possess the car keys or a large amount of money at the time of his arrest. The trial court, however, is not obliged to believe defendant's alibi testimony, *People v. Pierre* (1969), 114 Ill.App.2d 283, 294, *cert.* denied (1970), 400 U.S. 854, especially in a situation such as in the instant case where corroborating testimony does not extend to the time during which the crime was committed.

■■■ Examination of the law applicable to the contentions advanced by defendant in his attempt to demonstrate that he was not proven guilty beyond a reasonable doubt reveals that they all relate to the credibility to be attached to the testimony of various witnesses by the finder of facts. However, this court may not substitute its determination of the weight and credibility to be given to the testimony of the witnesses

for that of the trial court unless its determination is palpably erroneous. See *People v. Arndt*, 50 Ill.2d 390.

In analyzing the circumstances surrounding Popik's identification of defendant, it is evident that at the initial show-up Popik immediately, unequivocally and positively identified defendant as the driver of the getaway car. Popik testified that defendant was wearing the same red shirt at the show-up as he wore when he drove the getaway car. The car which belonged to defendant was established both by its license number and its description to be the one which was used in the robbery.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.