THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BARKSDALE, Defendant-Appellant.

(No. 59150;

First District (1st Division)—November 27, 1974.

*Supplemental opinion upon denial of rehearing filed December 23, 1974.*

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

James Barksdale was found guilty after a jury trial of the crimes of rape, deviate sexual assault and aggravated kidnapping. (Ill. Rev. Stat. 1971, ch. 38, pars. 10—2, 11—1 and 11—3.) He was sentenced to concurrent prison terms of 50 to 100 years for rape, 50 to 100 years for aggravated kidnapping and 10 to 14 years for deviate sexual assault. Defendant appeals, arguing: (1) that the trial court improperly refused to rule upon his motion to exclude evidence of a prior conviction until he had testified; (2) that the evidence was insufficient to prove venue beyond a reasonable doubt; (3) that the trial court erred in permitting the introduction of rebuttal evidence which showed the commission of another crime; (4) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; (5) that his motion to suppress evidence obtained as the result of an illegal arrest was improperly denied; and (6) that the closing argument of the prosecutor was improper and prejudicial.

The complainant testified that on June 23, 1971, at approximately 4 A.M., she was walking down Sheridan Road in Chicago approximately one block from her house when a car passed and a man, whom she later identified as the defendant, shouted to her. She continued to walk and the car pulled up alongside. The defendant jumped out of the passenger side of the vehicle, hit her over the head and dragged her into the car. Defendant pushed her onto the floor of the back seat, put what appeared to be a gun to her head and told her to keep quiet or he would kill her. The defendant then got into the car and started driving. While he drove, defendant kept his hand on the complainant's upper thigh, telling her not to move or he would kill her. At approximately 6:10 A.M., the defendant stopped the car in an open area which the complainant could not identify. Defendant went to the trunk of the vehicle and removed a cord which he used to tie the complainant's hands behind her back. Defendant then dragged the complainant from the car and threw her down on a sleeping bag which he had stretched out. While the complainant was sitting on the sleeping bag, the defendant was directly in front of her. Defendant ripped open the complainant's blouse, removed her bra and tore it in half. Defendant then removed her pants. Defendant ordered her to perform an act of oral copulation upon him and she complied. Defendant then struck her above the right breast and on the side of the head, and threatened to beat her more severely. Defendant then performed an act of oral copulation upon her. Thereafter, defendant untied her hands and allowed her to put on her clothing.

Defendant took the complainant back to the car and placed her in the rear seat. A short time later, he ordered her to remove her clothing.

She complied and the defendant forced her to have intercourse with him. Defendant ordered her to get down on her forearms and knees and had anal intercourse with her. Defendant then ordered the complainant to get dressed and to lie down on the floor of the car. Defendant started driving and told the complainant not to report the incident to the police. The complainant testified that defendant dropped her off in an alley and told her not to move for 10 minutes. After the defendant left, the complainant went to a nearby garage where she told two men what had occurred. The police were called and they took her to Holy Cross Hospital.

The complainant described her attacker as a male Negro, 5 feet 10 inches tall, medium brown complexion, short-cropped black hair, brown eyes, 150 to 175 pounds, 25 to 26 years of age, ear-length sideburns, wearing wire-rimmed glasses, a short-sleeved knit shirt, corduroy slacks, brown sandals, black socks and red underwear. Her attacker had little pockmarks on his face below the sideburns. He did not have a moustache. The complainant described the defendant's car as a black, two-door Chevrolet Impala hardtop with black interior.

The complainant testified that on August 3, 1971, she attended a lineup at the Evanston Police Station with Chicago Police Investigator Bauer. She viewed a lineup of five men and identified the defendant as the man who had attacked her.

Stanley Szezesny, a Chicago police officer, testified that on June 23, 1971, at 8:20 A.M., pursuant to a radio message, he proceeded to the Western Auto Rebuilt Company, 3343 South Columbus, Chicago, Illinois. There he interviewed the complainant. Officer Szezesny testified that the complainant had a bruise on the upper portion of her forehead, her hair was disarranged, her eyes were red as if she had been crying, and her clothing was soiled. He transported the complainant to Holy Cross Hospital where she was examined.

Dr. Nathan Paparo testified that on June 23, 1971, he examined the complainant in the emergency room of Holy Cross Hospital. A vaginal smear was taken and tests proved that it was positive for the presence of spermatozoa. The complainant had a contusion about her forehead and there were multiple contusions on her breast, buttocks and lower extremities. She was extremely emotional, apprehensive and distraught.

Gerald Kirkham, a detective with the Evanston Police Department, testified that on August 2, 1971, at approximately 10:45 P.M. he observed the defendant driving a 1968 Chevrolet Impala two-door, black with a black vinyl top, in the 1800 block of Sheridan Road in Evanston, Illinois. He followed the vehicle until the defendant parked in the Northwestern University parking lot and proceeded onto the campus. Detective Kirk-

ham testified that he walked up to defendant's vehicle and observed an AM-FM cassette radio in the back seat. He then returned to his car and called for his supervisor, Sergeant Schockweiler, who arrived at the scene within 5 minutes. A short time later defendant returned to his vehicle. Detective Kirkham and Sergeant Schockweiler approached the defendant and identified themselves as police officers. Defendant produced a driver's license and at the officers' request, opened the trunk of his vehicle. Defendant was placed under arrest and Sergeant Schockweiler searched the interior of defendant's car where he found a chrome-plated, .32-caliber, automatic handgun underneath the driver's side of the front seat; the weapon was loaded with four live .32-caliber cartridges.

Thomas Hennegan, a detective for the Evanston Police Department, testified that after defendant's arrest, he recovered a pair of wire-rimmed glasses in a brief case in the rear seat of defendant's vehicle.

Kathy Nelson and Maynard Moore testified for the defense that during June and July of 1971 they knew the defendant, and he always wore a moustache. Kathy Nelson testified that the defendant had always had a medium-length natural haircut.

The State then presented a rebuttal witness who testified that 2 weeks after the complaining witness was raped, on July 8, 1971, at approximately 11 P.M., she was hitchhiking in the area of Fargo and Sheridan Road, Chicago, Illinois. She received a ride from the defendant who was driving a two-door, black Impala. She remained in defendant's car for 30 to 40 minutes until the car came to rest on a dirt road with trees on both sides. She remained at that location for approximately 4 hours. During that time, it was dark outside for 3 hours and light outside for 1 hour. She described the man she later identified as the defendant as a male Negro, 5 feet 10 inches, 170 pounds, short Afro, small sideburns, pock-marks on his face and wearing gold-framed glasses. At that time, defendant was not wearing a moustache. The witness testified that the next time she saw defendant was on August 3, 1971, at the Evanston Police Station. At that time defendant was wearing a moustache.

On cross-examination, the State's rebuttal witness testified that prior to entering defendant's car, she had consumed half a bottle of wine. She testified that after the incident, she told her father what had occurred and the police were then called. When she first talked to the police, she guessed that the car was a dark green Skylark. She stated that she had several conversations with police officers during which she described the defendant and the car he was driving. In response to questioning by defense counsel, she stated that she had previously testified in court as to what had occurred on July 8, 1971. The witness stated that she

originally told the police that the defendant's car was a four-door hard-top, dark color, possibly green, with a squeaky passenger door.

On re-direct examination, the State's rebuttal witness testified that during the incident defendant had a chrome-plated revolver in his hand.

In surrebuttal, the defense called Chicago Police Investigator Joseph Bauer who testified that he was assigned the investigation of the incident involving the State's rebuttal witness. At that time she told him that on July 8, 1971, she was hitchhiking when she was picked up by a driver in a motor vehicle. She described the car the offender was driving as a later model, two-door hardtop, green interior and exterior, floor console, bucket seats, electric clock and stereo. On cross-examination Investigator Bauer testified that to get a description of the vehicle, he took the witness to a parking lot and showed her a number of vehicles of different makes and models. At that time she indicated that one car was similar to the car the offender was driving. The car she identified was dark green in color.

Defendant's first contention is that it was error for the trial court to refuse to rule on his motion to exclude evidence of his prior convictions for rape, made pursuant to *People v. Montgomery*, 47 Ill.2d 510, 268 N.E. 2d 695, until after he had testified. At the close of the State's case and again after two defense witnesses had testified, defendant moved to ex-clude evidence of his prior convictions for the crime of rape if he were to testify. The trial court, on each occasion, refused to rule on defendant's motions, stating that it was premature and that the trial court would rule only after the defendant had testified. Defendant now urges that the trial court's refusal to rule prohibited him from testifying and thereby prejudiced him.

■■■ Section 6 of the Illinois Criminal Code of 1874 provides that evidence of prior convictions may be admitted in criminal cases for the purpose of impeaching a witness' credibility. (Ill. Rev. Stat. 1971, ch. 38, par. 155—1.) The *Montgomery* court adopted the then proposed Federal Rule 609 concerning the admissibility of prior convictions in construing section 6. *Montgomery* held that evidence of prior convictions may be admitted to impeach a witness only after three conditions are met: (1) the prior convictions are either felonies or crimes involving dis-honesty or false statements; (2) the date of conviction or the date of release of the witness from confinement, whichever is later, is not more than 10 years prior to the trial; and (3) the trial judge must determine in his own discretion that the probative value of the prior convictions outweighs any unfair prejudice that their admission may cause the de-fendant. The court has emphasized that even though the first two con-ditions are met, the trial judge has the discretionary power to admit or

not to admit the prior convictions. *People v. Ray*, 54 Ill.2d 377, 297 N.E. 2d 168.

In the instant case the first two conditions for the admission of the defendant's prior convictions were met. The defendant, in August 1958, was found guilty of one count of armed robbery, two counts of rape and one count of aggravated assault with intent to commit rape. He was sentenced to 25 years on each count of rape and received lesser sentences on the other charges. He was released on parole in April 1965 but was shortly thereafter returned to the penitentiary for a parole violation. He was ultimately released from custody in February 1970. The instant trial was held in October and November of 1972. The prosecution desired to have only the rape convictions admitted if the defendant testified. Those charges were felonies and the defendant had been released from custody within 10 years of the instant trial. Therefore, the first two requirements of admissibility under the *Montgomery* rule were met.

■■ What remained to be done under the *Montgomery* rule was for the trial judge to use his discretion to determine whether the probativeness of the prior convictions outweighed any unfair prejudicial effect they might have upon the defendant. The defendant contends that this does not give the court the discretion to wait until the defendant has testified before deciding on the admissibility of the prior convictions. The question of when a trial court should rule on a motion to exclude prior convictions was considered in the appellate court decision of *Ray*. The court said, "The trial court in its discretion may desire to grant such a motion, deny the same, or withhold its ruling until further evidence is heard * * *." (*People v. Ray*, 3 Ill.App.3d 517, 523, 278 N.E.2d 170, 174, reversed on other grounds, 54 Ill.2d 377, 297 N.E.2d 168.) The court may be in a better position to ascertain the probativeness and prejudicial effect of such evidence after it has heard the defendant's testimony. We are of the opinion that a trial court should have the discretion to withhold its ruling on a motion to suppress the admission of prior convictions until the defendant has testified.

Defendant's second contention is that the evidence failed to prove venue beyond a reasonable doubt. Defendant argues that from the complainant's trial testimony, it is unclear that the offense occurred within the boundaries of Cook County, since complainant testified that the defendant drove for several hours and she could not positively identify the place where the incident occurred.

In *People v. Taylor*, 121 Ill.App.2d 403, 257 N.E.2d 524 (reversed on other grounds, 48 Ill.2d 91, 268 N.E.2d 865), this court considered a similar contention. There the complainant testified that the defendant

had picked her up in the city of Chicago, forced her into a car and then drove to a secluded area. Thereafter, defendant drove her back and dropped her off in the city of Chicago. On appeal, defendant argued that the evidence was insufficient to establish beyond a reasonable doubt that venue could lie in Cook County since within the time that defendant drove, he could have reached four other counties. This court rejected that contention holding that venue was sufficiently proven to lie in Cook County, Illinois.

■■ Similarly, in the case at bar, the complainant testified that defendant abducted her as she walked down the street on North Sheridan Road, Chicago, Illinois. The defendant then drove to a secluded spot, which she did not recognize. Although the exact time the return trip took is not a matter of record, the prosecutrix testified that while returning her assailant stated that they were several minutes from the city. Thereafter, the defendant dropped her off on the southwest side of Chicago, Illinois. This evidence was sufficient to establish venue beyond a reasonable doubt.

Defendant's third contention is that he was denied a fair trial by the admission into evidence of the State's rebuttal witness' testimony that he was involved in a separate and distinct crime. The rebuttal witness was the complaining witness in an indictment of the defendant for another rape. During the State's presentation of its case, the prosecutrix in the instant case testified that during the incident, the defendant did not have a moustache. The defendant presented two witnesses who testified that during June and July, 1971, he did have a moustache. In rebuttal, the State called its rebuttal witness for the limited purpose of testifying that in July, 1971, defendant was not wearing a moustache. During her direct testimony, she stated that she was hitchhiking when she received a ride from the defendant. She remained in defendant's car for 30 to 40 minutes until the car stopped on a dirt road. She stayed at that location for approximately 4 hours. She stated that at that time she was able to get a clear look at the defendant and he was not wearing a moustache. The next time she saw the defendant was at the Evanston Police Station at which time he was wearing a moustache.

The only testimony brought out by the prosecution on direct examination of its rebuttal witness which might have implied the defendant's participation in another crime was the witness' reference to having seen the defendant at the police station. However, prior to that testimony the defendant objected to the witness' description of him. The defendant demanded that the police report be shown to the jury to determine what the witness had told the police "on these particular dates in question." The defendant's statements were made in open court before the jury.

The witness' testimony concerning seeing the defendant at the police station would have had little, if any, impact upon the jury after the defendant had already announced to the jury that the witness had made reports to the police concerning the defendant.

■■ It is doubtful that the mere fact the defendant was seen by a witness in the police station after having been with the defendant some weeks earlier constitutes evidence of another crime. (See *People v. Jackson*, 103 Ill.App.2d 209, 243 N.E.2d 551.) However, evidence of other crimes is admissible for a number of purposes including that of identifying the defendant. (*People v. Walker*, 34 Ill.2d 23, 213 N.E.2d 552; *People v. Harris*, 46 Ill.2d 395, 263 N.E.2d 35; *People v. Palmer*, 47 Ill.2d 289, 265 N.E.2d 627.) The State's purpose in presenting the rebuttal witness' testimony was to refute the defendant's witnesses who had put into dispute the prosecutrix's description of her assailant. We are of the opinion that the prosecution stayed within this purpose on direct examination, and, therefore, any inferences that the defendant had participated in another crime were not improper.

The defendant also objected to testimony elicited by the prosecution on redirect examination of its rebuttal witness that the defendant had a chrome-plated handgun on the day she was with the defendant. The testimony, although clearly harmful to the defendant, must be weighed in relation to the statements made by the defense and the testimony elicited by the defense on cross-examination.

Immediately after the State's rebuttal witness stated on direct examination that she saw the defendant at the police station some time after her initial encounter with him, the defense announced to the court in front of the jury:

"No, if the Court please, I think it is pretty evidence [*sic*] that what the State has done is introduced evidence of another crime. Why would she be in a police station?"

From this point on in the trial, it became evident that the defense had elected to forego any effort at keeping evidence of this other crime from the jury and rather chose to make a total attack on the credibility of the State's rebuttal witness' identification and description of the defendant. The defense, on cross-examination, questioned the witness in great detail as to how she described the defendant and his car to the police. Many questions were posed by the defense as to whether the witness had appeared in court concerning the matter. At one point defense counsel inquired whether the witness had appeared in court to "testify with respect to what happened that night."

■■ At the close of the defense's cross-examination of this witness, it was quite clear to the jury that the defendant had been charged with

a crime involving the State's rebuttal witness. A defendant may not object to the interjection of evidence of another crime when he himself has introduced evidence of that other crime. *People v. Sisson*, 116 Ill. App.2d 66, 253 N.E.2d 486.

■■ In response to the defendant's strong attack on the State's rebuttal witness' identification and description of the defendant and the car he was driving, the prosecution on redirect sought to bolster the credibility of that description. This effort led to the witness testifying on redirect that she had seen the defendant in possession of a chrome-plated revolver similiar to the one later seized when the defendant was arrested. The witness then identified that gun, already admitted into evidence, as the one she had seen in the defendant's hand that day. Although this testimony may have gone beyond what was necessary to establish the credibility of the witness' testimony, there was no error. As we have already noted, the defense had already brought out evidence of this other crime and was in no position to object. Furthermore, even if the defense had a right to object, the admission of this testimony was harmless at this point because the defendant had already brought out the fact that the defendant was charged with a crime concerning what happened with the State's rebuttal witness on that day. A defendant can neither complain of the admission of testimony which was invited by the defendant's own tactics at trial (*People v. Bell*, 53 Ill.2d 122, 290 N.E.2d 214), nor object to evidence of another crime where he himself has introduced evidence of that other crime. *People v. Sisson*, 116 Ill. App.2d 66, 253 N.E.2d 486.

Defendant's fourth contention is that the evidence was insufficient to establish his guilt beyond a reasonable doubt because his identification by the complainant was doubtful, vague and uncertain. Defendant argues that the time lapse of 6 weeks between the occurrence and the identification of the defendant, coupled with discrepancies in the complainant's description of the defendant to the police as to age, moustache, length of hair and facial features, combined to create a reasonable doubt as to his guilt.

It has often been held that the identification of an accused is a question for the trier of fact. The testimony of the prosecutrix alone, if clear and convincing, is sufficient to sustain a conviction, even if denied by the defendant and not corroborated. (*People v. Halteman*, 10 Ill.2d 74, 139 N.E.2d 286; *People v. Wright*, 3 Ill.App.3d 829, 279 N.E.2d 398.) The amount of time intervening between the incident and the identification is a factor to be considered, but identifications have been upheld where more than 1 month has elapsed. (*People v. Bennett*, 9 Ill.App.3d 1021, 293 N.E.2d 687.) Similarly, the question of an identifying witness' failure

to notice or describe facial hair or scars is not a prerequisite to identification but affects only the weight to be attached to the identification testimony. (*People v. Robinson*, 3 Ill.App.3d 843, 279 N.E.2d 526.) Precise accuracy in describing a defendant's characteristics is unnecessary where the identification is positive. *People v. Miller*, 30 Ill.2d 110, 195 N.E.2d 694.

■■ In the case at bar, the complainant testified that she was abducted by the defendant as she walked down the street near her home on Chicago's north side. The defendant drove her to a secluded area where he forced her to perform several acts of oral copulation and raped her. Defendant then drove her back to the city of Chicago and dropped her off in an alley on the southwest side of the city. The complainant testified that during the incident, which lasted several hours, she was able to clearly look at the defendant for substantial periods of time under adequate lighting conditions. Approximately 6 weeks after the incident, she attended a lineup at the Evanston police station which consisted of five men. After viewing the lineup, she positively identified the defendant as the man who had abducted and attacked her. After a careful review of the record, we find that the complainant's testimony was clear, convincing and sufficient to support defendant's conviction beyond a reasonable doubt. In addition, the complainant's testimony was corroborated by other evidence at trial, including many specifics about the car the offender was driving, the gun he had in his possession and the wire-rimmed glasses he wore that night.

Defendant's fifth contention is that the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal arrest. On appeal the defendant's only contention is that the officers arrested the defendant without having reasonable grounds to believe the defendant had committed an offense. Therefore, we will only address ourselves to the legality of the defendant's arrest.

A police officer may arrest a person without a warrant when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c).) The quantum of proof needed to establish probable cause is less than that required to sustain a conviction at trial. (*People v. Harper*, 16 Ill.App.3d 252, 305 N.E.2d 680.) The test of probable cause is whether a reasonable and prudent man in possession of the knowledge of the arresting officer would believe that the person to be arrested is guilty of a crime. *People v. Macias*, 39 Ill.2d 208, 234 N.E.2d 783.

At the pretrial motion to suppress, Evanston Police Sergeant Charles Schockweiler and Detective Gerald Kirkham testified that prior to the

arrest of the defendant, they had information concerning six kidnappings and rapes which had occurred in the general area. The offender was described as a male Negro, approximately 19 to 25 years of age, 5 feet 9 to 5 feet 11 inches tall, slender build, slight Afro, moustache, sideburns and wearing tinted glasses. The vehicle used by the offender was described as a 1968 black Chevrolet with a black vinyl top, damaged to the left rear and right front of the vehicle. The inside of the vehicle was described as having non-factory air-conditioning, bench-type seats dark in color, a small portable combination radio and tape player, and a small hole the size of a quarter in the carpet on the front passenger side of the vehicle. One victim had also described the trunk as containing a loose spare tire, umbrella and red or blue headband.

On August 2, 1971, Detective Kirkham was travelling down Sheridan Road when he observed a black over black, 1968 Chevrolet with damage to the left rear, driven by a male Negro wearing glasses. He followed the vehicle until the driver parked in the Northwestern University parking lot. After the driver left the vehicle, Detective Kirkham examined the car from the outside and observed that it contained a non-factory air-conditioning unit installed in the middle of the console, a bench-type front seat black in color, a portable tape deck and AM-FM radio in the rear seat of the vehicle, and a small hole in the carpet below the right heater vent on the passenger side of the vehicle.

Detective Kirkham radioed for assistance and a short time later Sergeant Schockweiler arrived at the scene. After again inspecting the vehicle, they waited for the driver to return. As defendant was entering the car, the officers approached and identified themselves. The defendant fit the general description of the offender. He produced a driver's license and stated that the vehicle belonged to his wife. At this point, the defense contends, the defendant had been effectively placed under arrest. In discussing this issue we will assume that the defendant's contention as to the time of arrest is correct. Shortly thereafter, the seized articles were found underneath the front seat and in the trunk of the car the defendant was driving. Among the articles seized was the chrome-plated handgun later placed in evidence at the trial.

■■ It is clear from the above testimony that prior to placing the defendant under arrest, the officers possessed sufficient information to believe that the defendant had committed a crime. The description the officers had of the offender's vehicle matched exactly that of the vehicle driven by the defendant. Defendant, himself, fit the general description of the offender. We conclude that, based upon the knowledge which the arresting officers had, it was reasonable for them to believe that the de-

fendant had committed an offense and they were therefore justified in placing him under arrest. *People v. Drayton*, 7 Ill.App.3d 812, 288 N.E.2d 922.

The defendant's final contention is that he was denied a fair trial by the improper argument of the prosecutor. Defendant first challenges portions of the prosecution's opening statement in which the prosecutor allegedly stated his personal opinion of the prosecutrix's veracity. First, the prosecutor stated that he believed the prosecutrix was "an intelligent woman." As the argument proceeded, the prosecutor stated several times that he believed that the evidence would convince the jury that the prosecutrix was an intelligent woman. Defendant objected to all these statements, and the court sustained several, but not all of these objections.

■■ Where a defendant claims that a prejudicial argument was used in his prosecution he must establish that there was a reasonable possibility that the questionable language, in light of all of the evidence, was a material factor in his conviction. (*People v. Nicholls*, 42 Ill.2d 91, 245 N.E.2d 771; *People v. Berry*, 18 Ill.2d 453, 165 N.E.2d 257.) We are of the opinion that the prosecutor's statements that he believed the prosecutrix was an intelligent woman and that the evidence would so show, did not substantially prejudice the defendant's rights. In light of the clear and convincing testimony of the prosecutrix, taken with the corroborating evidence, we hold that the prosecutor's statements, if improper, were not a material factor in the defendant's conviction.

■■ Defendant next complains of three comments made by the prosecutor in his closing argument, which he alleges charged defense counsel with trickery. A careful examination of the record demonstrates that the defendant did not object to any of these comments. The error, if any, was therefore waived. *People v. Weaver*, 7 Ill.App.3d 1104, 288 N.E.2d 669; *People v. Donald*, 29 Ill.2d 283, 194 N.E.2d 227.

Defendant also complains that the prosecutor in the rebuttal portion of his closing argument stated that the jury did not have all of the facts regarding the State's rebuttal witness and that the jury should not prejudge her conduct. Defendant urges that this comment informed the jury of other misconduct on the part of the defendant and was therefore improper. Prior to the prosecutor's argument, defense counsel had gone into a lengthy discussion of the testimony of the witness, where he stated that he felt as if he had just ended two trials. Defense counsel argued that the "second trial" had as a complaining witness the State's rebuttal witness whom he felt had lied on the witness stand and had severely hurt the State's case. Defense counsel repeatedly referred to the rebuttal witness' trial testimony and her inability to describe accurately certain

features of the defendant's automobile. Defense counsel also stated that the witness had trouble "making up" her story and that even her father did not believe her. Thereafter the prosecutor in the rebuttal portion of his closing argument stated that their rebuttal witness was called to the witness stand for a limited purpose, only to testify as to whether or not the defendant was wearing a moustache, and that the jury did not know all of the facts about the State's rebuttal witness and therefore should not prejudge her conduct.

██ It is a well established rule that defense counsel cannot invite reply in his closing argument and thereafter complain on appeal that it was prejudiced by the rebuttal which followed. (*People v. Pearson,* 52 Ill.2d 260, 287 N.E.2d 715; *People v. Bey,* 51 Ill.2d 262, 281 N.E.2d 638; *People v. Burton,* 6 Ill.App.3d 879, 286 N.E.2d 792.) Here, defense counsel's characterization of the State's rebuttal witness as a liar, his statements that even her father did not believe her story, and his constant reference to her testimony and its believability invited the subsequent comments made by the prosecutor. Under these circumstances, defendant cannot complain of the comments which he himself precipitated. Furthermore, as we previously discussed, the defendant brought out in his cross-examination of the State's rebuttal witness a great deal of evidence concerning this matter. The defendant cannot now complain that the prosecution has made a possible reference to another crime of the defendant when the defendant already has brought out evidence of that other crime. *People v. Sisson,* 116 Ill.App.2d 66, 253 N.E.2d 486.

The defendant finally complains that the prosecutor incorrectly defined reasonable doubt in his final argument. After stating that the defendant must be proven guilty beyond a reasonable doubt, the prosecutor said in his closing argument, "Beyond a reasonable doubt is not beyond beyond [*sic*] a reasonable doubt. Beyond a reasonable doubt is not beyond all doubt." We are of the opinion that the statement was not a factor in the defendant's conviction.

For the foregoing reasons, the judgment is affirmed.

Judgment affirmed.

EGAN, P. J., and HALLETT, J., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE BURKE delivered the opinion of the court:

On page 2 of the petition for rehearing the defendant has cited the following language of the trial court in support of his argument that the

judge considered that he had no discretion to pass on the motion before the defendant testified:

> "Well, it's too early for your motion now. * * * I will entertain your motion at that time after he takes the stand if he becomes a witness. * * * When I entertain your motion. I will consider ruling on it."

The other remarks of the trial court are highlighted on page 3 of the petition. It is significant that Judge Ryan said: "Well, it's too early for your motion now." The *People v. Montgomery* case discussed (page 518) the factors noted in *United States v. Gordon* that a trial court should consider in passing on the admissibility of a prior conviction. One of the factors is "the subsequent career of the person." It is difficult to imagine how that could be brought to the attention of Judge Ryan except by testimony; and the best source of that testimony would be the defendant. Consequently, Judge Ryan's remarks could be construed to mean that he could not *intelligently* exercise his discretion until he heard evidence touching on the subsequent career of the defendant and that it would come when and if the defendant took the stand.

The requested rehearing is denied; certificate of importance is denied.

Denied.

EGAN, P. J., and HALLETT, J., concur.