**UNITED STATES of America ex rel. James BARKSDALE, Petitioner-Appellant,**

v.

**Allyn R. SIELAFF, Director Illinois Department of Corrections, Respondent-Appellee.**

No. 78–1278.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1978.

Decided Oct. 11, 1978.

Rehearings Denied Nov. 21, 1978.

Michael H. Salsbury, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Thomas Connors, Chicago, Ill., for respondent-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

Barksdale appeals the district court's granting of summary judgment for respondent on three paragraphs of a seven paragraph petition for writ of habeas corpus.[1] Barksdale contends the district court erred in granting summary judgment with respect to

1. the claim that he was denied a speedy trial;
2. the claim that his car was illegally searched in violation of the fourth amendment; and
3. the claim that the trial court admitted unreliable eyewitness testimony and evidence of other crimes which was so prejudicial as to deny him due process of law.

Having reviewed the various state and federal decisions and records, we conclude these contentions are meritless, and affirm.

## I. SPEEDY TRIAL CLAIM

■■■ Barksdale was convicted in the Illinois state courts of aggravated kidnapping, rape and deviate sexual conduct. He appealed the conviction to the Illinois Appellate Court. The conviction was affirmed. See People v. Barksdale, 24 Ill. App.3d 489, 321 N.E.2d 489 (1974). Denial of a right to speedy trial was not alleged or dealt with in the state court appeal. The appellee argues that Barksdale's failure to raise this issue in the state courts and exhaust his state remedies is fatal to any review by a federal court on habeas corpus. This is generally the law. See Pitchess v. Davis, 421 U.S. 482, 486, 95 S.Ct. 1748, 1751, 44 L.Ed.2d 317 (1975). The statute, 28

U.S.C. § 2254, conferring habeas corpus jurisdiction on federal courts, provides:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This court has previously found the Illinois Post-Conviction Hearing Act is an ineffective remedy as interpreted by the Illinois state courts. See United States ex rel. Williams v. Israel, 556 F.2d 865 (7th Cir. 1977); United States ex rel. Williams v. Brantley, 502 F.2d 1383 (7th Cir. 1974). Following a direct appeal, the Illinois state courts consider that the doctrines of res judicata and waiver apply to all claims which were raised in that appeal or could have been raised. Since Barksdale's claim could have been raised in the state courts, it would be deemed waived and he would have no state remedy. Therefore, we reach the merits of this issue, as did the district court.

Appellant claims that the district court failed to consider the balancing criteria set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for speedy trial claims and that the district court erred in finding that Barksdale himself requested or agreed to all of the continuances.

The Barker court identified four factors which should be balanced in considering whether there has been denial of a speedy trial: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to defendant. Id. at 530, 92

* Robert Van Pelt, United States Senior District Judge of Nebraska, is sitting by designation.

1. The remaining paragraphs were either stricken, dismissed or summary judgment was granted for respondent. These other rulings have not been challenged on appeal. The petition for habeas corpus attacked two indictments, Nos. 72–1015 and 71–2375. The state record was not before the district court in 72–1015.

Subsequent to briefing, the district court entered final judgment which dismissed the claims with respect to 72–1015 without prejudice to petitioner's right to file a new petition. Counsel for petitioner has admitted in correspondence to the court that the issues raised on appeal with respect to Indictment No. 72–1015 are now moot, and they are not further considered herein.

S.Ct. 2182. It is clear from the opinion that failure of the defendant to object to delays weighs heavily against him.

> We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced or even cases in which the continuances were granted ex parte.

*Id.* at 536, 92 S.Ct. at 2195. The district court was primarily concerned with the delay occasioned by Barksdale and his failure to object to the continuances. There was little to be weighed in Barksdale's favor.

The record here shows that appellant was arrested on August 2, 1971 and his trial commenced 15 months later, on October 31, 1972. The state court records indicate that on December 2, 1971 Barksdale's attorney moved for reduction of bail. At that time there were five indictments pending against him, four of which charged aggravated kidnapping, and three included rape. Bail was reduced and the record indicates that Barksdale was released on December 16 and remained free until he was arrested on March 18, 1972 on another rape charge. Prior to defendant's release in December, 1971 the case had been continued six times. The first three times there was an agreement made in open court with the defendant's express consent; the last three times the continuance was at defendant's request and during this period he changed counsel. During the time period the defendant remained free on bond, the case was continued seven times. Five times the continuances were at defendant's request and twice there was express agreement made in open court, with defendant, to continue the case. During this period, defendant again had a new attorney entering an appearance.

Within less than a week after his March 18, 1972 arrest, defendant's counsel filed a motion to withdraw. On March 24, 1972, a fourth new attorney was appointed for defendant, and by express agreement of all parties the case was continued. This attorney requested continuances on April 11 and May 1. Counsel for defendant first demanded trial on May 17. For the remainder of the period, the state requested three continuances, Barksdale's attorney one, and the court ordered the case continued on its own motion nine times. Both counsel agreed in open court to continuances three times. As late as October 10, 1972 Barksdale asked for appointment of a new attorney and refused to cooperate with the attorney he had. There is no indication that his counsel was incompetent, and Barksdale's action can hardly be considered that of a man who is anxious to go to trial. Many of the court's orders continuing the case extended it only two, three or four days and presumably were due to scheduling difficulties. While a defendant may not forever be kept waiting because of overcrowded dockets, such delay must be viewed in light of the overall record. A substantial number of the delays were caused by his own counsel's request and the fact that he changed counsel three times. Although demand was made for trial on May 17, Barksdale did not object to the continuances.[2] The speedy trial issue was never raised prior to trial or in any of the post-trial proceedings. There is no specific allegation that any witnesses were lost through the delay or that memories were dimmed. Barksdale did not spend the entire time in confinement.

█ Despite the district court's incorrect statement that each continuance was at defendant's request or with his consent, we conclude on the record in this case that the

---

2. On July 5, with his counsel absent because of a hearing in another court, Barksdale indicated he wished to proceed without counsel on a hearing to quash the five indictments, because it was in his best interests and any delay was not his fault. The court allowed the defendant to proceed on his motion without his counsel. This hardly rises to the level of an objection of

denial of a speedy trial. Defendant's reply brief makes mention of the fact that Barksdale filed a petition for a writ of mandamus in the Illinois Supreme Court on July 17, 1972 in which he asserted his speedy trial claims. However, a copy of that petition has not been furnished on appeal.

claim of denial of a speedy trial is unsupported.

## II. FOURTH AMENDMENT CLAIM

Barksdale's pro se petition alleges that he was arrested without probable cause and without an arrest warrant and that his car was searched in violation of his fourth amendment rights. A search of the vehicle occurred simultaneously with the arrest, and a second warrantless search was conducted at police headquarters where Barksdale's car was impounded following the arrest. Police found a revolver inside the car during the initial search and a pair of glasses inside the car on the second search. Both items were introduced at the trial and identified by the victim as belonging to the assailant. The district court considered this claim on its merits and found probable cause for the arrest and search. Although *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) was decided prior to the district court's opinion in this case,[3] the court made no reference to *Stone* and apparently did not consider it. Because *Stone* limits federal habeas corpus relief where a state prisoner raises a fourth amendment claim, its applicability to this case must be considered. The *Stone* court stated:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 482, 96 S.Ct. at 3046. The Government argues that Barksdale had an opportunity to raise this claim in the state courts; Barksdale argues that there has not been "full and fair" consideration where the state appellate courts have not addressed the issue.

The record shows that prior to trial a motion was made to quash the arrest and suppress the items found during the search of the car. After a hearing, these motions were denied by the trial court. Appellant appealed his conviction to the Illinois Appellate Court. The pro se notice of appeal alleged violations of Barksdale's first, fourth, fifth, sixth, eighth and fourteenth amendment rights in addition to alleged trial errors. However, the court-appointed attorney did not pursue the fourth amendment claim. Six specific grounds were advanced by appellant, one of which was

> his motion to suppress evidence obtained as a result of an illegal arrest was improperly denied.

*People v. Barksdale*, 24 Ill.App.3d 489, 321 N.E.2d 489, 491 (1974). The Illinois Appellate Court later stated in the opinion that defendant's only real contention was that defendant's arrest was illegal. In order to deal with this contention, they reviewed the testimony taken at the motion to suppress, and determined that there was probable cause for the *arrest*.

Based on the foregoing, we conclude that *Stone v. Powell* precludes this court from considering appellant's fourth amendment claims, and that the district court should have dismissed this claim. Under the language of *Stone*, the state courts must only provide an *opportunity* for full and fair litigation. The trial court in this case actually did hear pretrial suppression motions on the issue, and the opportunity to raise this issue was available in the state courts on direct appeal.

Barksdale argues on appeal in this court that no circuit court has held that if there has not been an appellate review of the issue there has been a full and fair hearing. It is true that many cases involve a failure to raise the search and seizure issue in the trial court. *See Pulver v. Cunningham*, 562 F.2d 198 (2d Cir. 1977) (failure to raise fourth amendment theory in pretrial suppression hearing or at trial precluded relief); *Mack v. Cupp*, 564 F.2d 898 (9th Cir. 1977) (state trial court did not hold evidentiary hearing because it found factual alle-

---

3. *Stone* was decided July 6, 1976 and the district court decided Barksdale's case on July 26, 1976.

gations of petition and motion to suppress were conclusory and did not state sufficient facts to conflict with officers' affidavits; although the appellate court incorrectly summarized the facts, federal relief not available even if state appellate court reached an incorrect decision). Appellant's argument loses some of its strength, however, when you consider that Powell's illegal arrest and search claim was never considered on its merits by the appellate court, although it was considered in the trial court. In *Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978), the fourth amendment issue was never considered on the merits by a state court at any level. Nevertheless, the Second Circuit Court of Appeals, en banc, held that the petition for habeas corpus relief must be dismissed, stating

> In *Stone* all that the Court required was that the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim; it did not further indicate that such opportunity, if not exercised in the state court, was only lost when the defendant or his counsel deliberately and intentionally sought to by-pass the state process.

*Id.* at 839. *But see O'Berry v. Wainwright,* 546 F.2d 1204, 1213 (5th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977). We find that appellant in this case received a similar opportunity for full and fair litigation in the state courts. We direct the district court to vacate that portion of its opinion dealing with the fourth amendment issues and to dismiss that claim on the basis of *Stone, supra.*

## III. EVIDENTIARY CLAIMS

Appellant complains of the following errors in the admission of evidence:

1. The complaining witness' identification testimony was unreliable; and
2. A rebuttal witness' testimony presented evidence of other crimes and was prejudicial.

Appellant contends that each of these errors is substantial enough to warrant reversal of this case. These claimed errors were reviewed either on direct appeal in the state appellate court or by the district court in the habeas action, and both courts ruled against appellant. We similarly find no merit to these contentions.

The complaining witness picked Barksdale out of a line-up held on August 3, 1971. Appellant alleged in the habeas action that there was a suggestive line-up which tainted the in-court identification. The district court found that even if a suggestive line-up were assumed,[4] the witness demonstrated an adequate independent basis for identification of appellant. The only issue on appeal is whether the district court correctly concluded the testimony was reliable. *Israel v. Odom,* 521 F.2d 1370, 1373 (7th Cir. 1975). We have read the testimony of the complaining witness in the trial court, and find it reliable. The witness' testimony was very exact. She at all times remained sure of the identity of her attacker. Her description immediately after the incident and at the trial remained consistent. It is true that she estimated Barksdale's age as younger than he really is. It is also true that she testified that he was clean shaven with short cropped hair on the date of the alleged incident. Two of Barksdale's coworkers testified that at that time Barksdale had a long Afro haircut and

4. It is questionable whether Barksdale could prove the line-up was unduly suggestive. His attorney was present at the line-up and chose the position in which he would stand. The complaining witness, when asked to describe the men in the line-up, stated that they were all black, all approximately five foot ten and all of uniform size. There is no indication of how the line-up was suggestive, and no objection was made in the trial court nor was this claim raised on direct appeal. One argument that appellant makes in this section is that the complaining witness mistakenly identified him because another man matching the eyewitness identification was convicted in 1972 for a series of rapes. Appellant contends the district court should have held an evidentiary hearing on this contention. However, under *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), this allegation does not amount to "a substantial allegation of newly discovered evidence."

a moustache. The fact two witnesses described Barksdale differently does not mean that the complaining witness' testimony was unreliable. The jury may have disbelieved Barksdale's witnesses. Similarly, there was dispute over what the witness meant by the term "pockmarks". She testified at trial that she was only referring to small places under his sideburns. The officer who interviewed her after the incident and obtained a description admitted that he did not ask her to locate the position of the pockmarks. Furthermore, at trial she was able to indicate the pockmarks to which she had referred. Although she apparently did not mention it to the investigating officer, another factor in her identification of Barksdale was prominent veins on his arms, which she identified when asked to by defense counsel. The identification presented a question for the jury.

█ With regard to evidence of other crimes, the state introduced rebuttal testimony from a 16 year old girl that she had seen Barksdale on July 8, 1971 at which time he did not have a moustache and had short hair. This testimony was elicited for identification purposes to discredit the testimony by appellant's witnesses that he had a long Afro and moustache. The witness testified she was hitchhiking and was voluntarily picked up by defendant. She was driven to a place which she did not recognize and stayed in the car approximately four hours, the last hour of which it was light. The driver's face was on occasion, while it was light, as close as only about an inch away. Although the rebuttal witness testified she voluntarily entered the car, and made no reference to the activities during the four hours she was in the car, in a case of this nature the jury could have inferred that another crime took place. However, defendant has to take much of the blame for placing the question of other crimes before the jury. After the witness identified defendant as the man by whom she had been picked up, the defendant himself and not his attorney, objected and requested that the police report be brought before the jury. This was the first mention made of the fact that there were police reports. Later, on direct examination, she stated that she had seen defendant a second time at the police station. Defense counsel then objected saying it was obvious the state was introducing evidence of other crimes since she would have no other reason to be in a police station. The state court found that defendant was primarily responsible for bringing out the repeated references to other crimes evidence. We agree. The state court also found that evidence of other crimes was admissible for the purpose of identifying the defendant. Although the Federal Rules of Evidence remained in preliminary form and were not enacted as of the trial date, we note that Fed.R.Evid. rule 404(b) would also support admissibility of other crimes evidence to establish identity. Identity was certainly a most important question in this case. If defendant had a moustache and long hair when the crime was committed, he was wrongly identified by the complainant. The state did not offer this evidence in its case in chief. After the defense made its claim of long hair and a moustache, and not until then, the state called its witness to testify to short hair and to absence of a moustache. The testimony was relevant. Its probative weight and value was great. The point it sought to establish, namely, whether defendant committed the crime, was equally important as was the establishment of the rape itself, the kidnapping and the deviate conduct. We hold the evidence was admissible.

The clerk of this court is directed to enter judgment requiring the district court to dismiss appellant's search and seizure claims on the basis of *Stone v. Powell, supra,* and affirming the district court in all other respects.